986 A.2d 743 (2010)
411 N.J. Super. 458
STATE of New Jersey, Plaintiff-Respondent,
v.
Raheem VENABLE, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Malik Simmons, Defendant-Appellant.
No. A-5237-06T4,
No. A-5527-06T4
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 2009.
Decided January 29, 2010.
*744 Muhammad Ibn Bashir, attorney for appellant Raheem Venable.
Yvonne Smith Segars, Public Defender, attorney for appellant Malik Simmons (Alan I. Smith, Designated Counsel, on the brief).
Appellant Raheem Venable filed a pro se supplemental brief.
Appellant Malik Simmons filed a pro se supplemental brief.
Paula T. Dow, Essex County Prosecutor, attorney for respondent (Sara A. Friedman, Assistant Prosecutor, of counsel and on the briefs).
Before Judges SKILLMAN, FUENTES and SIMONELLI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
A jury found codefendants Raheem Venable and Malik Simmons guilty of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3(a)(1),(2); possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5(b); and possession of a *745 weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a). The trial court sentenced Venable to life imprisonment, subject to the sixty-three year and nine-month period of parole ineligibility mandated by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the murder, and a concurrent ten-year term of imprisonment for possession of a handgun without a permit. The court sentenced Simmons to a forty-year term of imprisonment, subject to the thirty-four year period of parole ineligibility mandated by NERA for the murder, and a concurrent five-year term for possession of a handgun without a permit. The court merged defendants' convictions for possession of a weapon for an unlawful purpose.
Defendants' convictions were based on the death of Fahiym Phelps as a result of a shooting outside a bar in Irvington on the night of November 27, 2004. Before the shooting, Phelps was inside the bar with his brother, Sharif, and a cousin, Tashon Young. During that time, Phelps had a verbal altercation with Venable, which was witnessed by Sharif, Young, and the manager of the bar, Sean Dubose. The altercation was interrupted by Dubose, who had a security guard, Michael Gibbs, escort Venable outside the bar, while Dubose stayed inside with Phelps.
The bar closed approximately ten minutes later, at which time Phelps, Sharif, and Young walked outside, where they encountered Venable and Simmons, both of whom were armed with handguns. Defendants began shooting in Phelps's direction, discharging between six and ten bullets. Six of the bullets struck Phelps, causing fatal injuries.
After the crime, Sharif and Young identified both Venable and Simmons as the shooters from photographic arrays shown to them by the police. Sharif and Young also identified Venable and Simmons as the shooters at trial. In addition, although he did not witness the shooting, Gibbs identified Venable as the person who had the altercation with Phelps and was escorted out of the bar.
Neither Venable nor Simmons testified or presented any other witnesses in their defense.
Venable and Simmons have both appealed from their convictions and sentences. We consolidate the appeals.
[At the court's direction, the list of arguments presented by defendants has been omitted from the published version of this opinion.]
We reject these arguments and affirm defendants' convictions and sentences.
[At the court's direction, the only published part of this opinion is the court's discussion of defendants' argument that the trial court violated their constitutional right to a public trial.]

VIII.
The only one of the numerous arguments presented in defendants' pro se supplemental briefs that warrants discussion is the argument that the trial court violated their federal and state constitutional right to a public trial by excluding the victim's and defendants' families from the courtroom during jury selection.
This argument is based on the following statement by the trial court before the beginning of jury selection:
Are there individuals here from either the defense'[s] family or the victim's family because if so I don't want anybody from either family in the courtroom during jury selection because we're going to have 85 jurors, and the courtroom is just going to be too crowded. I don't, for security reasons, I don't want members of the defendants' family *746 or the victim's family in the courtroom during jury selection.
Venable's counsel responded to this statement by saying: "Oh, okay. No problem." Simmons's counsel did not respond to this statement, and instead requested the removal of defendants' handcuffs before the jury panel entered the courtroom.
We make two initial observations before reviewing the law applicable to defendants' claim of the denial of their right to a public trial. First, there is no evidence any members of the victim's or defendants' families were in the courthouse and desired to attend jury selection. Thus, there is no basis for a finding that any specific person was excluded from the jury selection stage of the trial. Second, neither defendant objected to the court's statement that members of the victim's and defendants' families would not be allowed in the courtroom during jury selection. As a result, the court did not have an opportunity to explore whether there were other measures available, short of total exclusion of family members, for preserving the security of the courtroom during jury selection.
The United States and New Jersey Constitutions contain nearly identical guarantees of a criminal defendant's right to a public trial.[1] The guarantee of a public trial helps assure that a defendant is "not unjustly condemned" and that the judge and jury remain "keenly alive" through the "presence of interested spectators" of "their responsibility and ... the importance of their function[.]" Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31, 38 (1984) (quoting Gannett Co. v. De Pasquale, 443 U.S. 368, 380, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608, 622 (1979)). The right to a public trial extends to pretrial proceedings such as jury selection. Gibbons v. Savage, 555 F.3d 112, 115 (2d Cir.), cert. denied, ___ U.S. ___, 130 S.Ct. 61, 175 L.Ed.2d 233 (2009); State v. Cuccio, 350 N.J.Super. 248, 260, 794 A.2d 880 (App.Div.), certif. denied, 174 N.J. 43, 803 A.2d 638 (2002). If a defendant's right to a public trial has been denied, the error is considered to be "structural" and therefore requires a reversal of a conviction without a showing that the defendant was prejudiced by the denial. Neder v. United States, 527 U.S. 1, 7-9, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 45-46 (1999); Waller, supra, 467 U.S. at 49-50, 104 S.Ct. at 2217, 81 L.Ed.2d at 40-41; Cuccio, supra, 350 N.J.Super. at 261, 794 A.2d 880.
However, this does not mean that any exclusion of persons from the courtroom during the course of trial proceedings, no matter how brief or insignificant, automatically constitutes a denial of the right to a public trial that necessitates a new trial. Instead, courts in various jurisdictions have held that some exclusions from the courtroom are "too trivial" to constitute a denial of the defendant's right to a public trial. See, e.g., Gibbons, supra, 555 F.3d at 119-21; United States v. Perry, *747 479 F.3d 885, 889-91 (D.C.Cir.2007); Carson v. Fischer, 421 F.3d 83, 92-94 (2d Cir.2005); United States v. Ivester, 316 F.3d 955, 958-60 (9th Cir.2003); Braun v. Powell, 227 F.3d 908, 917-20 (7th Cir. 2000), cert. denied, 531 U.S. 1182, 121 S.Ct. 1164, 148 L.Ed.2d 1023 (2001); United States v. Al Smadi, 15 F.3d 153, 154-55 (10th Cir.1994); Peterson v. Williams, 85 F.3d 39, 42-44 (2d Cir.), cert. denied, 519 U.S. 878, 117 S.Ct. 202, 136 L.Ed.2d 138 (1996); State v. Ndina, 315 Wis.2d 653, 761 N.W.2d 612, 622-28 (2009).
In Peterson, the court observed:
A triviality standard, properly understood, does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant  whether otherwise innocent or guilty  of the protections conferred by the Sixth Amendment.
[85 F.3d at 42.]
In Gibbons, the court held that the temporary exclusion from the courtroom during jury selection of all spectators, including the defendant's mother, could be found too trivial to warrant a reversal of the defendant's conviction. The court indicated that "[i]n evaluating whether a closure is trivial," a court should "look to the values the Supreme Court explained were furthered by the public trial guarantee, focusing on (1) ensuring a fair trial, (2) reminding the prosecutor and judge of their responsibility to the accused and the importance of their function, (3) encouraging witnesses to come forward, and (4) discouraging perjury." 555 F.3d at 121 (citing Waller, supra, 467 U.S. at 46-47, 104 S.Ct. at 2215-16, 81 L.Ed.2d at 38-39). The court concluded that "[t]he third and fourth values derived from Waller ... [were] not implicated by [the] voir dire [of prospective jurors] because no witnesses testified." Ibid. The court further concluded:
As to the first and second values, in the particular circumstances of this case, limiting presence at the voir dire proceedings to only the attorneys, judge, defendant, and prospective jurors for one afternoon did not subvert these values. Even if the trial judge had not excluded Gibbons's mother from the courtroom, she would not have been able to watch a significant portion of what occurred during that afternoon session because the private interviews of individual jurors as to their reasons for inability to serve were justifiably conducted in an adjacent room out of the hearing and sight of the other jurors. Further, nothing of significance happened during the part of the session that took place in the courtroom.[2]
[Ibid.]
For these reasons, the court held:
Although the closure was not justified, we conclude upon examination of all the details of what occurred, that event was too trivial to warrant the remedy of nullifying an otherwise properly conducted state court criminal trial.
[Ibid.]
In contrast to the temporary exclusion from the courtroom of the defendant's mother in Gibbons, we concluded in Cuccio *748 that the exclusion of members of the defendant's and victim's family members during jury selection constituted a violation of the defendant's right to a public trial. The excluded family members included the defendant's brother, who had been assisting defense counsel in the preparation of defendant's case. 350 N.J.Super. at 258, 794 A.2d 880. Defense counsel vigorously objected to the exclusion of family members and moved for a mistrial on this basis. Under these circumstances, we concluded that the exclusion from the courtroom during jury selection of the public, including defendant's family, constituted a violation of defendant's right to a public trial that required a reversal of his conviction. Id. at 265-69, 794 A.2d 880. In reaching this conclusion, we noted that "defendant's family and the victim's family had been present in the courtroom for all of the pretrial proceedings" until the moment the court excluded them. Id. at 267, 794 A.2d 880. In addition, although not deciding the issue, we noted that "the exclusion of defendant's brother, an attorney-at-law who was assisting in the defense, [was] a likely violation of defendant's right to counsel, ... guaranteed by the Sixth Amendment to the United States Constitution and article I, ¶ 10 of the New Jersey Constitution." Id. at 268, 794 A.2d 880. We rejected the State's argument, based on Peterson, supra, 85 F.3d 39, that the total closure of the courtroom could be found to be "too trivial to amount to a violation of defendant's constitutional right to a public trial," relying among other things upon the length of time the public was excluded. Ibid.
We conclude that this case has more similarities to Gibbons than to Cuccio and that the trial court's announcement that members of the victim's and defendants' families, if any, would not be allowed in the courtroom during jury selection was too trivial to warrant a finding of a violation of defendants' right to a public trial that requires a reversal of their convictions. In fact, this is an even stronger case than Gibbons for the conclusion that the exclusion of family members during jury selection does not require a reversal of defendants' convictions. Initially, we note that unlike in both Gibbons and Cuccio, where the trial courts closed the courtrooms to all spectators, Gibbons, supra, 555 F.3d at 114; Cuccio, supra, 350 N.J.Super. at 258, 794 A.2d 880, the closure in this case was a partial one, limited to members of the victim's and defendants' families. Moreover, unlike both Gibbons and Cuccio, where the defense objected to the exclusion of family members from the courtroom during jury selection, Gibbons, supra, 555 F.3d at 114; Cuccio, 350 N.J.Super. at 258, 794 A.2d 880, Venable consented and Simmons did not object to the exclusion.[3] Most significantly, unlike both Gibbons and Cuccio, where the record clearly indicated that actual members of the defendants' families who desired to be present in the courtroom during jury selection had been excluded, Gibbons, supra, 555 F.3d at 114; Cuccio, supra, 350 N.J.Super. at 258, 794 A.2d 880, there is no evidence that any specific members of Venable's or Simmons's families were present in the courthouse and desired to attend the often tedious process of jury selection. Furthermore, this case did not involve a situation, such as in Cuccio, where a member of the defendant's family was qualified and prepared to assist in his *749 defense if allowed to remain in the courtroom. Therefore, the circumstances of this case satisfy the triviality standard articulated in Peterson and applied to the jury selection stage of a criminal trial in Gibbons.
Indeed, because there is no indication that any members of the victim's or defendants' families sought to attend jury selection, and defendants did not object to the court's announcement that family members would not be allowed in the courtroom during that process, the claimed denial of the right to a public trial in this case is not merely trivial but hypothetical. We cannot say with any assurance that any actual person who desired to be present during jury selection was excluded. Therefore, as in Levine v. United States, 362 U.S. 610, 619-20, 80 S.Ct. 1038, 1044, 4 L.Ed.2d 989, 997 (1960), defendants' claimed denial of their right to a public trial is "an abstract claim [raised] only as an afterthought on appeal[,]" which does not warrant a reversal of their convictions.
[....]
Affirmed.
NOTES
[1] The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." Article I, paragraph 10, of the New Jersey Constitution provides: "In all criminal prosecutions the accused shall have the right to a speedy and public trial...." The public and press also have a right of access to trial court proceedings that is protected by the First Amendment to the United States Constitution and article I, paragraph 6 of the New Jersey Constitution. See Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596, 603-06, 102 S.Ct. 2613, 2618-20, 73 L.Ed.2d 248, 255-57 (1978); State v. Williams, 93 N.J. 39, 55-57, 459 A.2d 641 (1983). This appeal involves solely the right of criminal defendants to a public trial under the Sixth Amendment to the United States Constitution and article I, paragraph 10 of the New Jersey Constitution.
[2] We note that the jury selection in this case was not transcribed. Therefore, the record before us does not indicate what occurred during that process. The record also does not indicate whether the subject of exclusion of the victim's and defendants' families was raised again during jury selection.
[3] We express no opinion as to whether a failure to object to exclusion of family members from the courtroom could be found to constitute a waiver of this aspect of the right to a public trial. Our rejection of defendants' public trial argument is not based on any concept of waiver but rather on the combination of circumstances discussed in this paragraph.