**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1003-17T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

RAHEEM VENABLE, a/k/a
RAHKIL SHAKYER, RAHIM
JOHNSON, RAJON KIRKLAND,
RAHEEM VENEAVLE, and
RAHJOHN WIGGINS,

 Defendant-Appellant.

_____

> Submitted September 25, 2019 – Decided October 17, 2019
>
> Before Judges Haas and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 05-05-1284.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).
>
> Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Lucille M.

Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Raheem Venable appeals from an order denying reconsideration of a denial of his second petition for post-conviction relief (PCR). We affirm.

Our standard of review of a denial of a PCR is whether the judge's findings of fact were supported by sufficient credible evidence. State v. Nunez-Valdez, 200 N.J. 129, 141 (2009). Here, we are convinced the trial judge's findings are overwhelmingly supported by the record, including his finding that each of defendant's appellate arguments are time barred under Rule 3:22-12(a)(2).

We incorporate by reference the facts and procedural history outlined in both our unpublished opinion, which summarily affirmed the denial of defendant's first PCR petition, State v. Simmons,[1] Nos. A-5565-11, A-1321-12 (App. Div. Nov. 26, 2014) and our published decision, which affirmed defendant's conviction and sentence in a consolidated direct appeal, State v. Venable, 411 N.J. Super. 458 (App. Div. 2010). We highlight certain pertinent facts to lend context to the present appeal.

_____

[1] Defendant's codefendant at trial, Malik Simmons, is not involved in the instant appeal.

Defendant was found guilty of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3(a)(1) and (2); possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5(b); and possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a). He was sentenced to life in prison, subject to a sixty-three-year and nine-month period of parole ineligibility mandated by the No Early Release Act, N.J.S.A. 2C:43-7.2, on the murder conviction. He also was sentenced to a concurrent ten-year prison term

As we stated in our prior published opinion:

> Defendant's convictions were based on the death of Fahiym Phelps as a result of a shooting outside a bar in Irvington on the night of November 27, 2004. Before the shooting, Phelps was inside the bar with his brother, Sharif, and a cousin, Tashon Young. During that time, Phelps had a verbal altercation with Venable, which was witnessed by Sharif, Young, and the manager of the bar, Sean Dubose. The altercation was interrupted by Dubose, who had a security guard . . . escort Venable outside the bar, while Dubose stayed inside with Phelps.

> The bar closed approximately ten minutes later, at which time Phelps, Sharif, and Young walked outside, where they encountered Venable and [his co-defendant, Malik Simmons], both of whom were armed with handguns. Defendants began shooting in Phelps's direction, discharging between six and ten bullets. Six of the bullets struck Phelps, causing fatal injuries.

> After the crime, Sharif and Young identified both Venable and Simmons as the shooters from

photographic arrays shown to them by the police. Sharif and Young also identified Venable and Simmons as the shooters at trial. In addition, although he did not witness the shooting, [the security guard from the bar] identified Venable as the person who had the altercation with Phelps and was escorted out of the bar.

Neither Venable nor Simmons testified or presented any other witnesses in their defense.

[Venable, 411 N.J. Super. at 461.]

On appeal, defendant raises the following arguments:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING TO ESTABLISH HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL OF HIS APPELLATE AND FIRST PCR ATTORNEY[S].

A.    DENIAL OF RIGHT TO PUBLIC TRIAL.

B.    FAILURE TO INTERVIEW LAQUAN "Q" JORDAN.

POINT II

THE DENIAL OF THE NOTICE OF MOTION FOR RECONSIDERATION WAS ERROR.

These arguments are without merit.

In Point I of his brief, defendant asserts he was entitled to an evidentiary hearing because his first PCR counsel, as well as appellate counsel, were

4

ineffective. His claim of ineffective assistance of counsel stems from the fact counsel neglected to cite the case of <u>Presley v. Georgia</u>, 558 U.S. 209 (2010) to advance the claim that the trial judge erred when he asked members of the defendants' and victim's families to leave the courtroom during jury selection.

It is uncontroverted that the judge who presided over defendant's trial did make this request. Specifically, the trial judge stated:

> Are there individuals here from either the defendants' famil[ies] or the victim's family because if so I don't want anybody from either family in the courtroom during jury selection because we're going to have [eighty-five] jurors, and the courtroom is just going to be too crowded . . . . [F]or security reasons, I don't want members of the defendants' famil[ies] or the victim's family in the courtroom during jury selection.

In response to this request, defendant's counsel stated, "Oh, okay. No problem." Although counsel did not object to the exclusion of defendant's family from the courtroom during voir dire, the record is devoid of any indication that defendant's family actually was present in the courtroom when the judge made his request.

Merely raising a claim for PCR does not entitle a defendant to an evidentiary hearing, as a defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999). Evidentiary hearings

should be granted only if a defendant has presented a prima facie claim of ineffective assistance of counsel. State v. Preciose, 129 N.J. 451, 462 (1992).

In order to establish a prima facie case of ineffective assistance of counsel, a defendant is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 52 (1987). Under the first prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second prong, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

There is sufficient evidence in the record to support the denial of a PCR hearing on defendant's Presley claim. Indeed, defendant's case is entirely distinguishable from Presley, as there is no indication that any member of defendant's family was present in the courtroom when the trial judge asked

members of the defendants' and victim's families to leave prior to jury selection. Moreover, defendant's trial attorney lodged no objection to this request.

Likewise, the record before us supports the denial of an evidentiary hearing on defendant's claim he secured newly discovered evidence from Laquan Jordan (Q). The record confirms that at trial, Sharif and Young testified at length on direct and cross-examination about the events surrounding the shooting. According to Sharif, on the night of the murder, he rode with his friend, Q, to the Steps bar. There, they planned to meet Phelps and Young. Once Sharif and Q entered the bar, they separated. Sharif did not know Q's whereabouts when Phelps and Venable argued inside the bar. At trial, Sharif testified Phelps and Young followed him out of the bar. Once outside, Sharif stood by a fire hydrant trying to reconnect with Q, but he did not see him until after the shooting.

As we have indicated, in January 2010, we affirmed defendant's conviction on his direct appeal. Within a few months of this decision, defendant claimed he received two letters from Q, a man he stated he did not know. In his communications, Q indicated to defendant that on the night of the murder, Sharif and Young told Q they had not seen the shooter. Based on this information,

7

defendant drafted a certification for Q which was submitted to the court with his first PCR petition on August 4, 2010. Q's certification stated in relevant part:

> 3. At the time of the shooting of Fahiym Phelps, me and Sharif were standing next to my car, which was parked on Brookside and Woodlawn away from the area of the shooting.
>
> 4. After the shooting, me and Sharif ran down to the front of Steps. There we saw Fahiym Phelps lying on the ground. Tash[on] Young was with Fahiym.
>
> 5. Sharif asked Tash[on] what happened. Tash[on] responded that he didn't know. He was talking to some girl. When he heard shots, he jogged off until the shooting stopped. He managed only to get a glance of a tall dark skin guy who ran from the scene with a gun.
>
> 6. I later learned that Sharif and Tash[on] had told the police that they saw the shooters. I knew this was untrue but I did not get involved because Sharif was my boy and he had just lost his brother and I didn't know the guys who were identified as the shooters.

Defendant stated in his first PCR petition that he was denied effective assistance of counsel because his attorney failed to investigate Q as a potential defense witness and that he was entitled to a new trial based on such newly discovered evidence. The first PCR judge determined Q's certification constituted impeachment evidence and that there was no evidence to suggest Q's testimony would change the verdict. Accordingly, the judge denied defendant's first PCR petition on August 1, 2012.

8

Defendant appealed this ruling and renewed his arguments pertaining to Q, as well as the <u>Presley</u> issue. As these issues were without merit, we affirmed the denial of the first PCR petition on November 26, 2014.

In affirming the denial of the first PCR petition, we observed:

> counsels' performance at the time of trial was reasonable. Neither defendant knew Q . . . . Neither defendant has asserted any facts he may have known pre-trial that could have prompted his attorney to investigate Q as a possible witness for the defense. Defense counsel simply had no reason to believe that Q had information favorable to defendants under the factual circumstances. . . . Moreover, although Q was discussed throughout the lengthy cross-examination of [Sharif], counsel argued the State's failure to produce Q equated to a failure of proof creating reasonable doubt. Importantly, defendants clearly used Q's absence from trial strategically for their benefits. There was no reason to surmise that calling Q as a defense witness would have been beneficial. We, therefore, conclude defendants have failed to demonstrate their counsels rendered substandard performance, as such they have not satisfied the <u>Strickland/Fritz</u> test.
>
> [<u>Simmons</u>, Nos. A-5565-11, A-1321-12 (slip op. at 14-15). ]

Notably, defendant filed a habeas corpus petition in federal court, raising similar claims, and that petition, too, was denied.

On June 26, 2015, defendant filed a second PCR petition in which defendant contended his first PCR counsel was ineffective due to his failure to

9

interview Q. The court denied the second PCR petition on the grounds it was time barred. Defendant subsequently moved for reconsideration, attaching an updated certification from Q, dated November 8, 2016. He argued this updated certification constituted newly discovered evidence and, therefore, he was entitled to an evidentiary hearing. Q's 2016 certification stated, in relevant part:

> 4. I have previously provided a [c]ertification in this case that did not fully explain what I saw the night Fahiym Phelps was killed.
>
> 5. I was present when Phelps was shot. I had my back to him when I heard the shots.
>
> 6. When the shots were fired, [defendant] was near me and we both ran behind my vehicle to hide.
>
> 7. As I looked from my vehicle, [defendant] was behind me away from the shooting.
>
> 8. We both saw people continue shooting as we hid.
>
> 9. One of the shooters was dark skinned of average build and taller than me.
>
> 10. The second shooter wore a grey hoodie. He was brown skinned and average build.
>
> 11. I saw Sharif[] after the shooting. He came from around the side of the building and went to Fahiym.
>
> 12. Based on my observations, I do not believe Sharif[] saw the individual who shot Fahiym.

13. I know that [defendant] did not shoot Fahiym because he was near me during the entire incident.

Unquestionably, defendant's second PCR petition, which alleged ineffectiveness of counsel, was time barred under Rule 3:22-12(a)(2), because it was not filed within one year from the denial of defendant's first PCR petition on August 1, 2012. Defendant's motion for reconsideration suffered from this same lack of timeliness. Notably, the time bar set forth in Rule 3:22-12(a) may not be relaxed or enlarged. R. 1:3-4(c); R. 3:22-12(b); see State v. Dillard, 208 N.J. Super 722, 727 (App. Div. 1986) (holding that the appeal of the defendant's first PCR petition did not toll the time limitation of Rule 3:22-12); see also Rule 3:22-4(b)(confirming a second or subsequent petition for PCR shall be dismissed unless . . . it is timely under R. 3:22-12(a)(2)).

Even if defendant's second PCR petition and motion for reconsideration were not subject to a time bar, we discern no error in the trial court's finding that defendant failed to establish his claim of ineffective assistance of counsel. Although defendant theorizes Q's information from 2016 would have come to light if his first PCR counsel had interviewed Q, the record before us is devoid of any evidence that such an interview would have benefitted defendant, for reasons we have expressed in our earlier opinions. It is apparent that Q's 2016 certification, much like his earlier certification, was in the nature of

11

impeachment evidence, in that it contradicted the trial testimony of other eyewitnesses. However, such evidence is insufficient to demonstrate the verdict at defendant's trial would have been different if Q had been interviewed by defendant's first PCR counsel. Additionally, trial counsel used Q's absence from trial tactically for the benefit of the defendants. Accordingly, the trial judge reviewing defendant's second PCR petition committed no error in finding defendant was unable to satisfy the Strickland/Fritz test.

Lastly, we find no abuse of discretion in the denial of defendant's motion for reconsideration. Reconsideration should be granted only in those rare instances when a court's decision is based upon a profoundly incorrect or irrational basis, or the court "either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). As defendant's second PCR claims were time barred, the denial of defendant's motion for reconsideration was appropriate.

Defendant's remaining arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1003-17T4