[No. 38549-0-II.   Division Two.   February 2, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. DEAN MARTIN LORMOR, *Appellant*.

*Thomas E. Doyle*, for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1  PENOYAR, A.C.J. — Dean M. Lormor appeals his unlawful possession of a controlled substance, methamphetamine, conviction.[1] He claims that the trial court violated his right to a public trial when it excluded his nearly-four-year-old daughter from the courtroom. Alternatively, he argues that counsel's failure to object to this closure denied him his right to effective assistance of counsel. Because the trial court's ruling did not implicate Lormor's public trial right, we affirm.

## FACTS

¶2  On May 22, 2008, Thurston County Sheriff's Deputy Ryan Hoover took Lormor into custody after a Lewis County sheriff's deputy arrested him following a domestic dispute between Lormor and his wife. Hoover transported Lormor to jail and searched him as part of the jail intake process, finding a small bag of white powder in Lormor's left front jeans pocket. Lormor told Hoover that it was methamphetamine, that it belonged to his wife, and that he put it in his pocket so the law enforcement officers would not find it at her house. Later though, he explained that the methamphetamine was his, that he did not want to get his wife into trouble, and that he should go back to prison instead of her. Washington State Patrol lab testing established that the substance was methamphetamine.

¶3  The State charged Lormor with unlawful possession of a controlled substance, methamphetamine. Lormor tes-

---

[1] A violation of RCW 69.50.4013(1).

tified at his jury trial that he found the baggie of drugs in his home, put it in his pocket because he had children living there, and forgot about it until the deputy discovered it. The sentencing court imposed a 24-month sentence following the jury's guilty verdict. Lormor appeals.

## ANALYSIS

I. OPEN TRIAL

¶4 Lormor first argues that the trial court violated his right to a public trial guaranteed by the Sixth Amendment to the United States Constitution; article I, section 22 of the Washington Constitution; and article I, section 10 of the Washington Constitution. He explains that the court violated these protections when it excluded his three-, almost-four-year-old daughter from the proceedings.

¶5 Before opening statements, the following colloquy took place:

> THE PROSECUTOR: The first issue is -- we talked at sidebar about this, and just for the record, there was some indication that the defendant either talked to or talked in front of one of the potential jurors and members of the panel regarding his daughter . . . . I'd ask the Court to instruct him to not discuss this or anything around the jurors that have been chosen . . . .
>
> . . . .
>
> THE COURT: Okay. Mr. Lormor, I didn't really particularly in the presence of all the jurors want to inquire into the report that you were overheard making some comment in disappointment that your daughter was excluded from the courtroom . . . . I understand that your daughter was initially here. She is unfortunately in a medical condition that requires her to be in a wheelchair and to be on apparently breathing assistance.
>
> THE DEFENDANT: Ventilator, yes.
>
> THE COURT: I don't know how old she is, but she appears to me to be of adolescent years, but I don't know what her age is.
>
> DEFENDANT: She'll be four on the 29th.
>
> THE COURT: So she is even younger than adolescent years. I made the decision she should not be in the courtroom for a

number of reasons: Number one, at that age I don't know how much she would understand of the proceedings. Two, given the setup I could even hear at the bench the ventilator operating, and I concluded that would be an inappropriate distraction and frankly difficult for her as it would be potentially distracting for the jury. And so that's the decision I've made.

And I have empathy for her circumstances as well as yours in that regard, but I just don't think it's appropriate for a young person to be in this kind of a controlled setting, and I did hear some sounds from her which are perfectly understandable. I don't want in any way to limit her need to express herself for assistance or how she's feeling or anything else, but I just believe that would serve as an inappropriate distraction to the process and so that's why I've excluded her, and I want you to know that I don't take that lightly but I would do that in any type of case under the circumstances unless she were a necessary witness and was competent to testify, which given her tender years she would not be under the evidence rules of the court.

Report of Proceedings (RP) (Sept. 24, 2008) at 21-23.

¶6 The State then expressed concern that Lormor wanted to use his daughter's terminal condition to "gain sympathy from the jury." RP (Sept. 24, 2008) at 23. The trial court replied:

So I've already made my reasons known for excluding Mr. Lormor's daughter. I'll maintain them. I think they respond to counsel's concerns, and so I would direct, however, that counsel or the defendant or any witnesses not make reference to the status of defendant's daughter without further alerting the court and outside the jury's presence having a discussion as to whether such can be done before any mention of it takes place in front of the jury.

RP (Sept. 24, 2008) at 25.

¶7 The State compares this situation to that in *State v. Gregory*, 158 Wn.2d 759, 147 P.3d 1201 (2006). There, the court excluded the defendant's aunt while his grandmother was testifying. The court observed the aunt nodding her head, which it regarded as either prompting the witness or

tampering with the witness. *Gregory*, 158 Wn.2d at 815. The Supreme Court affirmed, holding that the trial court never fully closed the courtroom, distinguishing *Orange*,[2] *Brightman*,[3] and *Bone-Club*,[4] and holding that none of these cases "explicitly limited or undermined the trial court's inherent authority to regulate the conduct of a trial by excluding one person from the courtroom for a limited period of time." *Gregory*, 158 Wn.2d at 816 (citing *State v. Pacheco*, 107 Wn.2d 59, 67-68, 726 P.2d 981 (1986) (excluding defendant-look-alike from courtroom did not violate right to public trial)).

¶8 *Gregory*, though, did not involve the complete exclusion of a family member from both jury selection and trial. It also involved the trial court exercising its inherent authority to exclude a spectator that was potentially undermining the fairness of the trial. Further, our Supreme Court has expressed the importance of allowing family participation:

> Echoing the conclusions of Maryland's highest court, we emphasize that, "[a]llong with the general detriments associated with a closed trial, notably *the inability of the public to judge for itself and to reinforce by its presence the fairness of the process*, the present case demonstrates other kinds of harms: *the inability of the defendant's family to contribute their knowledge or insight to the jury selection* and *the inability of the venire[ ]persons to see the interested individuals*." *Watters [v. State]*, 328 Md. [38, ]48[, 612 A.2d 1288 (1992)] (emphasis added). As a result of the unconstitutional courtroom closure in the present case, what the prospective jurors saw, as they entered and exited the courtroom during at least the first two days of voir dire, was not the participation of the defendant's family members in the jury selection process, but their conspicuous exclusion from it. The vigil of Orange's parents outside the closed courtroom doors may have been especially suggestive here, given that prospective jurors were questioned

---

[2] *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 812, 100 P.3d 291 (2004).

[3] *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

[4] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

in chambers on their knowledge of the Orange family's reputation in the community.

*In re Pers. Restraint of Orange*, 152 Wn.2d 795, 812, 100 P.3d 291 (2004) (first alteration in original).

¶9 We employ a two-part analysis in addressing a public trial claim. First, did the trial court's ruling implicate the defendant's public trial right? Second, if so, did the trial court properly consider the five *Bone-Club* factors?[5] Finding that the answer to the first question is no, we need not address the *Bone-Club* factors.

¶10 Although Washington law does not define a closure, the federal authorities we discuss below treat the exclusion of family members as a closure under the Sixth Amendment. Our analysis assumes a closure occurred, but we find that the trial court's actions here did not implicate Lormor's public trial right.

¶11 Instructive is *United States v. Perry*, 375 U.S. App. D.C. 238, 479 F.3d 885 (2007). There, the defendant faced charges of unlawfully accessing a computer, resulting in damage. On the second day of trial, inclement weather resulted in school closures, and Perry brought his eight-year-old son to court. The trial court at first suggested that Perry not allow his son to attend because of his concern about how witnessing his father's trial might negatively affect the young boy. When Perry decided to keep his child

---

[5] These are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

in court, the trial court ordered the child removed, reasoning that " 'such an effort on his part is made solely to evoke sympathy on the part of the jurors.' " *Perry*, 479 F.3d at 887. Perry openly denied that was his motive but, nonetheless, Perry's wife removed the child.

¶12 Perry argued that removing his wife and child violated his Sixth Amendment public trial right.[6] After discussing the purposes of a public trial set out in *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984),[7] the *Perry* court observed:

> The *Waller* test applies, however, only if closing the courtroom implicates the defendant's Sixth Amendment right. *United States v. Ivester*, 316 F.3d 955, 958 (9th Cir.2003) ("Before applying the *Waller* test to determine whether the district court violated [the defendant's] Sixth Amendment right to a public trial, we must first determine whether the right attaches . . . .") (citation omitted). While "[d]etermining with any precision the contours of th[e] right [to a public trial] is a difficult task," *Braun v. Powell*, 227 F.3d 908, 917 (7th Cir.2000), the Supreme Court has suggested, albeit in dicta, that the right to a public trial entitles a criminal defendant "at the very least . . . to have his friends, relatives and counsel present, no matter with what offense he may be charged." *In re Oliver*, 333 U.S.[ 257, ]272, 68 S.Ct. 499[, 92 L. Ed. 682 (1948)]; *see also Braun*, 227 F.3d at 917 (describing "Supreme Court's requirement" that "friend[s] or relative[s] of the defendant" be allowed to attend trial); *Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir.1994) ("[T]he Supreme Court has specifically noted a special concern for assuring the attendance of family members of the accused."). Nevertheless, some circuits "have recognized that there are certain instances in which [an] exclusion cannot be characterized properly as implicating the constitutional guarantee." *Braun*, 227 F.3d at 918; *see also id.* at 919 (exclusion of member of jury venire not chosen to sit as juror did not

---

[6] The appellate court noted that the trial court did not exclude the wife and, in fact, encouraged her presence. *Perry*, 479 F.3d at 890 n.5.

[7] The public trial right (1) " 'ensure[s] that judge and prosecutor carry out their duties responsibly,' " (2) " 'encourages witnesses to come forward,' " and (3) " 'discourages perjury.' " *Perry*, 479 F.3d at 889 (alteration in original) (quoting *Waller*, 467 U.S. at 46).

implicate Sixth Amendment); *see also Carson v. Fischer*, 421 F.3d 83, 93 (2d Cir.2005) (exclusion of defendant's ex-mother-in-law did not implicate Sixth Amendment); *Ivester*, 316 F.3d at 960 (exclusion of "spectators during the brief mid-trial questioning of the jurors to determine if they were concerned for their safety" did not implicate Sixth Amendment); *Peterson v. Williams*, 85 F.3d 39 (2d Cir.1996) (inadvertent courtroom closing during defendant's brief testimony did not implicate Sixth Amendment). That is, even a problematic courtroom closing can be "too trivial to amount to a violation of the [Sixth] Amendment." *Peterson*, 85 F.3d at 42. The Second Circuit explained:

> A triviality standard, properly understood, does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment.

*Id.* A courtroom closing is "trivial" if it does not implicate the "values served by the Sixth Amendment" as set forth in *Waller. Id.* (citing *Waller*, 467 U.S. at 46-47, 104 S.Ct. 2210); *see also Braun*, 227 F.3d at 918-19. "[E]ven the exclusion of a family member or friend may, in rare circumstances . . . , not implicate the Sixth Amendment public trial guarantee." *Carson*, 421 F.3d at 94.

Using the triviality standard, we believe the district court's action did not violate the Sixth Amendment. Perry's son was the only person excluded from the proceedings and an eight-year-old's presence in the courtroom would neither "ensure that judge and prosecutor carry out their duties responsibly" nor "discourage[ ] perjury." *Waller*, 467 U.S. at 46, 104 S. Ct. 2210. Nor would the child's attendance "encourage [a] witness[ ] to come forward." *Id.* Perry's trial remained open to the public—and specifically to his wife—throughout.

*Perry*, 479 F.3d at 889-91 (some alterations in original) (footnote omitted).

¶13 Similarly here, excluding Lormor's nearly-four-year-old daughter did not violate his federal or state constitutional right of public trial. His daughter was the only person excluded from the proceeding and her presence in the courtroom would not "ensure[ ] that judge and prosecutor carry out their duties responsibly" nor "discourage[ ] perjury." *Waller*, 467 U.S. at 46. Nor would the child's attendance "encourage[, a] witness[ ] to come forward." *Waller*, 467 U.S. at 46. Also, because of her young age, her presence would not have served the purpose of allowing family members to assist in jury selection. *See Orange*, 152 Wn.2d at 812.

¶14 Nothing before us shows that excluding Lormor's daughter from trial undermined his right to a public trial. Rather, the trial court's ruling, which it based on its concern that the child's ventilator would make it difficult to hear and would serve as a distraction, sought to advance Lormor's right to a fair trial.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

¶15 Lormor next argues that counsel's failure to object on public trial grounds denied him his right to effective assistance of counsel. Because the trial court's ruling did not implicate Lormor's public trial right, this claim necessarily fails.

¶16 We affirm.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted at 169 Wn.2d 1010 (2010).