09-4738-cr
*United States v. Gupta*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2010
(Argued: March 7, 2011;  Decided: June 17, 2011)
Docket No. 09-4738-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

*-v.-*

RAGHUBIR K. GUPTA,

*Defendant-Appellant*.

_____

BEFORE:    WALKER, B.D. PARKER, and HALL, *Circuit Judges*.
_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, *J.*), convicting Defendant-Appellant Raghubir K. Gupta of one count of immigration fraud and sentencing him principally to 51 months' imprisonment.  We hold: (1) the exclusion of the public from the courtroom during *voir dire*, though unjustified, was too trivial to implicate Gupta's Sixth Amendment right to a public trial; and (2) *Presley v. Georgia*, 130 S. Ct. 721 (2010) (*per curiam*), does not alter the "triviality exception" to the public trial guarantee that

1

we identified in *Peterson v. Williams*, 85 F.3d 39, 41-43 (2d Cir. 1996), and subsequent cases.

AFFIRMED.

Judge B.D. Parker dissents in a separate opinion.

────────────────────

JEFFREY HOFFMAN (Susan C. Wolfe, *on the brief*), Hoffman & Pollok L.L.P., New York, New York, *for Defendant-Appellant*.

LEE RENZIN, Assistant United States Attorney (Jesse M. Furman, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, *for Appellee*.

────────────────────

HALL, *Circuit Judge*:

This appeal requires us to revisit an issue last considered in *Gibbons v. Savage*, 555 F.3d 112 (2d Cir. 2009)—under what circumstances does the exclusion of the public from a courtroom during *voir dire* violate a defendant's Sixth Amendment right to a public trial.  In *Gibbons* and earlier cases, we identified an exception to this right applicable to situations where the exclusion of the public, though improper, was too trivial to implicate the Sixth Amendment's public trial guarantee, making vacatur of the defendant's conviction unnecessary.  We conclude that this exception applies here.  We further conclude that this exception is consistent with the Supreme Court's recent decision in *Presley v. Georgia*, 130 S. Ct. 721 (2010).

Accordingly, we reject Gupta's Sixth Amendment challenge and AFFIRM his conviction and sentence.  We dispose of Gupta's other arguments on appeal in a separate summary order filed today.

**BACKGROUND**

Defendant Raghubir K. Gupta was charged with one count of immigration fraud under 18 U.S.C. § 1546(a). Trial began on March 24, 2008 at approximately 9:45 a.m. After the *venire* panel was seated, the district court gave preliminary remarks concerning the nature of the case, the general responsibilities of jurors, the anticipated length of the trial, and the format of *voir dire*. The court also identified Gupta as the defendant and summarized the indictment. The court then read various questions to the *venire* from a written questionnaire, which was distributed to the prospective jurors to review. Following a short recess, the court called prospective jurors up to a sidebar to discuss their answers to the questionnaire, and after a second recess for lunch, the court posed questions to individual jurors regarding their background and interests. During the course of these questions, eleven jurors were dismissed for cause with the consent of both parties. Thereafter, counsel for both parties went to the jury room to exercise their peremptory challenges outside the presence of the *venire*; neither party objected to any of the challenges. The parties then returned to the courtroom, and the courtroom deputy empaneled the jury. After trial, the jury returned a guilty verdict, and the district court sentenced Gupta to 51 months' imprisonment. Gupta appealed.

In April 2010, we granted Gupta's motion for remand for additional fact-finding based on his allegation that a friend and a member of his family had been excluded from the courtroom during *voir dire*. On remand, Gupta submitted affidavits from his brother and girlfriend, Sudhir Gupta and Maria Young, who affirmed that on the morning of the first day of trial a court officer had asked them to leave the courtroom during *voir dire*; both stated that when they reentered the room later in the day, the jury had already been empaneled. Gupta's counsel affirmed that he

3

was unaware at the time of trial that Gupta's brother and girlfriend had been excluded from the courtroom. In lieu of an evidentiary hearing, the district court directed William Delaney, the courtroom deputy on duty on the first day of Gupta's trial, to submit an affidavit describing what had occurred. Delaney affirmed that after the *venire* panel was seated in the courtroom:

> At the Court's direction, in order to accommodate the large number of jurors in the venire panel, and to protect the panel from hearing anything about the case from any member of the public present, I requested that individuals who were not venire panel members leave the courtroom during the jury selection. I conveyed to those individuals that once the jury selection was complete, and there was again space in the public area of the courtroom, they were more than welcome to attend the proceedings.

The district court adopted Delaney's affidavit as its factual findings, after which jurisdiction was restored to us pursuant to the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

## DISCUSSION

A defendant's right to a public trial is guaranteed by the Sixth Amendment, *see Waller v. Georgia*, 467 U.S. 39, 45-47 (1984), and this right extends to *voir dire*, *Presley*, 130 S. Ct. at 724 ("[T]he Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors.") (citing *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 509-10 (1984) (the press and public have a First Amendment right to attend *voir dire*), and *Waller*, 467 U.S. at 46 (the Sixth Amendment right to a public trial is at least as broad as the First Amendment right to a public trial recognized in *Press-Enterprise*)); *accord Gibbons*, 555 F.3d at 115. Although the public trial guarantee creates a "presumption of openness," *Press-Enterprise*, 464 U.S. at 510, this is not absolute. Four criteria must be satisfied to overcome this

4

presumption and justify closure of a courtroom during a criminal proceeding: (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced"; (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the [proceeding]"; and (4) the trial court "must make findings adequate to support the closure." *Waller*, 467 U.S. at 48 (quoted in *Presley*, 130 S. Ct. at 724; *Gibbons*, 555 F.3d at 116; *Ayala v. Speckard*, 131 F.3d 62, 69 (2d Cir. 1997) (*en banc*)).

Based on Delaney's affidavit, Gupta's brother and girlfriend were excluded from *voir dire* because of "the large number of jurors in the *venire* panel" and the need "to protect the panel from hearing anything about the case from any member of the public present." Under *Waller*, these reasons are insufficient to justify a courtroom closure—a point the Government concedes. *See* Brief of Appellee at 25 ("[T]he District Court's exclusion of members of the public from the courtroom during *voir dire* violated the four-factor *Waller* test."); *see also Gibbons*, 555 F.3d at 117 (holding that under *Waller*, insufficient space because of the size of the *venire* and the risk of tainting the jury pool are not "compelling reasons" for closure). Notwithstanding this fact, the Government argues that under our "triviality exception," identified in *Gibbons* and earlier cases, the closure of the courtroom did not violate Gupta's Sixth Amendment public trial right. Gupta counters that *Gibbons* is distinguishable because there, the exclusion of the public was partial and temporary, and that our "triviality exception" is no longer valid post-*Presley*. We address each of these arguments in turn.

I. The "Triviality Exception"

Because the parties agree that under *Waller* the district court's exclusion of

Gupta's brother and girlfriend during *voir dire* was unjustified, we must determine whether that error violated Gupta's Sixth Amendment rights; under these circumstances, our starting point is the triviality exception.[1]  *See Smith v. Hollins*, 448 F.3d 533, 540 (2d Cir. 2006) ("[W]hen addressing whether an unjustified closure is a Sixth Amendment violation, a 'triviality standard' is the proper benchmark.").  We first identified a triviality exception to the public trial guarantee in *Peterson*:

> A triviality standard, properly understood, does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury."  It is, in other words, very different from a harmless error inquiry.  It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment.

85 F.3d at 42; *see Carson v. Fischer*, 421 F.3d 83, 94 (2d Cir. 2005) (under a triviality analysis, the determination that the exclusion was trivial is tantamount to "conclud[ing] that the error was not significant enough to rise to the level of a constitutional violation").  We observed that the

---

[1] Although we recognize that "[t]he denial of a public trial is a 'structural' error," *Smith v. Hollins*, 448 F.3d 533, 540 (2d Cir. 2006), "[i]t does not necessarily follow . . . that every deprivation [of a right] . . . considered to be 'structural' constitutes a violation of the Constitution or requires reversal of the conviction," *Gibbons*, 555 F.3d at 120.  Since *Peterson*, we have applied the triviality exception to the deprivation of the public trial right, despite that error's "structural" nature, reasoning that it would be "unimaginable" to assume that "every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—would require that a conviction be overturned." *Id.*; *see Smith*, 448 F.3d at 540 (distinguishing between a harmless error and a triviality analysis, and holding that as to the deprivation of the public trial right, the latter is the appropriate standard despite the error's structural nature); *Carson v. Fisher*, 421 F.3d 83, 92-94 (2d Cir. 2005) (same).  The relevant point of inquiry, therefore, is whether the exclusion was trivial—if so, Gupta's request that we vacate his conviction is unsupportable. *Cf. Gibbons*, 555 F.3d at 121 ("We need not rule on the metaphysical question whether, in view of the triviality of the incident, it was not a deprivation of a constitutional right, or in contrast, it was a violation of a constitutional right, but, in spite of the inapplicability of the harmless error rule, too trivial to justify vacating the [lower] court's judgment.").

6

core values protected by the Sixth Amendment were: "1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury." *Peterson*, 85 F.3d at 43 (citing *Waller*, 467 U.S. at 46-47). Since *Peterson*, we have used these values to determine whether an unjustified closure of a courtroom violates the public trial guarantee. *See Carson*, 421 F.3d at 92-93 ("[T]he question of whether a particular closure implicates the Sixth Amendment turns on whether it undermines the values the Amendment is aimed to protect."). If a courtroom closure subverts these values, it violates the Sixth Amendment, but if the closure is consistent with these values, it is trivial and does not implicate a defendant's right to a public trial. *See Morales v. United States*, 635 F.3d 39, 43 n.7 (2d Cir. 2011) ("Triviality is . . . gauged by the degree to which a particular closure undermines the values the Sixth Amendment was designed to protect." (citing *Gibbons*, 555 F.3d at 120-21)).

We most recently considered the triviality exception in *Gibbons*, which is analogous to the circumstances in this case. There, trial began in the early afternoon, and before inviting the *venire* into the courtroom, the trial judge excluded the defendant's mother, citing the large number of prospective jurors and the need to limit potential contact between the *venire* and any spectators. *See Gibbons*, 555 F.3d at 114. No spectators were permitted to observe the afternoon proceedings, during which the trial judge gave general instructions to prospective jurors, read the indictment, and questioned individual jurors as to their impartiality. *See id.* The trial judge, the prosecutor, and defense counsel also went to an adjacent room to talk privately with each prospective juror who had claimed an inability to serve. *See id.* By the end of the proceedings that day, several prospective jurors were excused with the consent of both parties.

7

*See id.* And when *voir dire* resumed the following morning, the defendant's mother was allowed into the courtroom to observe the rest of the proceedings. *See id.* at 114-15.

Based on these facts, we first held that the reasons articulated by the trial court to justify the exclusion of the defendant's mother "failed to satisfy the requirements of *Waller*." *Id.* at 119. Applying the triviality exception, however, we concluded that although the exclusion was unjustified, it did not subvert the values underlying the Sixth Amendment's public trial guarantee. *See id.* at 121. With regard to the third and fourth values—encouraging witnesses to come forward and discouraging perjury—we held that these values were "not implicated by *voir dire* because no witnesses testified." *Id.* And as to the first and second values—ensuring a fair trial and reminding the prosecutor and judge of their responsibility to the accused and the importance of their functions—we held that "limiting the presence at the *voir dire* proceedings to only the attorneys, judge, defendant, and prospective jurors for one afternoon did not subvert these values." *Id.* We emphasized:

> Even if the trial judge had not excluded Gibbons's mother from the courtroom, she would not have been able to watch a significant portion of what occurred during that afternoon session because the private interviews of the individual jurors as to their reasons for inability to serve were justifiably conducted in an adjacent room out of the hearing and sight of the other jurors. Further, nothing of significance happened during the part of the session that took place in the courtroom. The judge read the indictment, asked questions of a few jurors, and provided administrative details on what the jurors should expect if chosen. No prospective jurors were excused except with the consent of both parties. No peremptory challenges were made, and no obligations were asserted by either party to anything that occurred. The next morning, when *voir dire* resumed, Gibbons's mother was allowed to watch the proceedings.

*Id.*

We reach the same conclusion here. Because the closed proceedings in the instant case were limited to *voir dire*, the third and fourth values were not implicated. And as to the first and

8

second values, these too were not implicated because "nothing of significance happened." *Id.*

The district court gave prospective jurors general information about Gupta's case, described the charging indictment, and presented jurors with a written questionnaire listing possible grounds for ineligibility. The court also conducted a short sidebar discussion with each prospective juror concerning their responses to the written questionnaire (a process that would not have been audible to members of the public), and then posed general questions to the jurors in open court about their background and interests. Finally, the court and counsel for both parties adjourned to the jury room to exercise peremptory challenges; no objections were made to any of the challenges, and no jurors were dismissed without the consent of both parties.

We find no material difference between these facts and those in *Gibbons*. Indeed, the only actual difference is that in the instant case, the parties exercised their peremptory challenges while the proceedings were closed. But because this was done outside the presence of the *venire*, even if Gupta's brother and sister had been in the courtroom, they would not have been able to observe these challenges.[2] Additionally, we reject Gupta's attempt to distinguish *Gibbons* by characterizing the exclusion in that case as "partial and temporary." Although the exclusion in *Gibbons* was limited to the first afternoon of *voir dire*, and not, as in the instant case, to all of the *voir dire* proceedings, we are not persuaded that this distinction warrants a different outcome. That the public was not excluded for all of *voir dire* in *Gibbons* was because the jury selection began in the afternoon, leaving insufficient time to complete *voir dire* before the end of the day. In Gupta's case, jury selection began in the morning, which allowed the

---

[2] We note that in any event, neither party raised any objections to the peremptory challenges.

9

court to complete *voir dire* that same day. Regardless, nowhere in *Gibbons* did we intimate that our holding was limited to situations involving a partial, as opposed to a complete closure, of the *voir dire* proceedings. The focus of our analysis was what *transpired* during the closed proceedings. And because what transpired during *voir dire* in *Gibbons* did not implicate the values underlying the public trial guarantee, and because *voir dire* in *Gibbons* and the instant case are substantially identical, we see no reason to reach a different conclusion.[3]

Finally, we identify a broader, institutional reason that the exclusion here was trivial. Historically, public trials emerged in England in response to the excesses and abuses of secret tribunals. *See In re Oliver*, 333 U.S. 257, 266-70 (1948) (discussing the evolution of the public trial guarantee); *see generally* Amar, A. *Foreword: Sixth Amendment: First Principles*, 84 GEO. L.J. 641, 677-81 (1996) (cited in *Peterson*, 85 F.3d at 43 n.5); Radin, M, *The Right to a Public Trial*, 6 TEMP. L.Q. 381 (1932) (cited in *In re Oliver*, 333 U.S. at 268 n.21)). This was of

---

[3] Our conclusion that "nothing of significance happened" during *voir dire* is not, as the dissent intimates, drawn from whole cloth. *See* Dissenting Op. at 4, 6-7. Rather, as already discussed, *see supra* at 9-10, we reach this conclusion based on the striking similarity between what transpired during the excluded proceedings in *Gibbons* and in the instant case. And while we recognize that the exclusion in *Gibbons* was only partial, neither Gupta nor the dissent has identified any specific events which occurred during *voir dire* here that are distinguishable from *Gibbons*, and which might, as a consequence, suggest that the proceedings were unfair or that the prosecutor and judge were unaware of their responsibility to the accused and the importance of their functions—i.e., that the proceedings subverted the two relevant values underlying the public trial guarantee.

Additionally, we reject the dissent's attempt to extrapolate our holding beyond the narrow confines defined in this opinion. *See* Dissenting Op. at 6-7 ("Now, apparently, the summary exclusion of the public . . . can be excused so long as what occurred behind closed doors was brief and 'nothing of significance happened.'"). As made clear in *Peterson* and subsequent decisions, application of the triviality exception requires a fact-specific analysis of the unique circumstances in a given case to determine whether a particular exclusion implicates a defendant's public trial right. Nothing in our opinion alters this analytical framework—indeed, it simply reaffirms the rule articulated in *Gibbons* and applies it to the particular facts before us in this case.

10

paramount concern in *In re Oliver*, where a state judge sitting as a "one-man grand jury" charged, convicted, and sentenced a defendant with contempt during a secret session held in chambers. *See In re Oliver*, 333 U.S. at 258-59. Finding this unconstitutional, Justice Black, writing for the majority, opined that "[w]hatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *Id.* at 270. For in this respect, "[t]he knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *Id.*; *see Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 412 (1979) ("The public trial is rooted in the 'principle that justice cannot survive behind walls of silence[.]'") (Blackmun, J., concurring in part and dissenting in part) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966)); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (holding that publicity "serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice").

There is no question that a secret trial, insulated from the tempering effect of public witnesses, subverts the core values of the public trial guarantee. But if a public presence best ensures a fair criminal proceeding, then *voir dire,* by its very nature, is always "subject to contemporaneous review in the forum of public opinion," *In re Oliver*, 333 U.S. at 270, because the *venire* is drawn from the public itself. Indeed, from their inception, jury trials guaranteed public scrutiny of the criminal process because "'the presence of a jury . . . insured the presence of a large part of the public.'" *Press-Enterprise Co.*, 464 U.S. at 505 (quoting Radin at 388); *see* Radin at 388 ("We need scarcely be reminded that the jury was the *patria*, the 'country' and that

11

it was in that capacity and not as judges, that it was summoned.").  And unlike the jury, which loses its status as mere spectator and becomes an impartial trier of fact once empaneled, members of the *venire* remain public witnesses during much of the *voir dire* proceedings, listening to the court's questions and observing the conduct of counsel, until such time as they are chosen for the jury, disqualified, or excused.[4]  For this reason, even where a trial court unjustifiably excludes spectators from the courtroom during *voir dire*, the presence of the *venire* lessens the extent to which that closure implicates the defendant's public trial right because the *venire*, derived from and representative of the public, guarantees that the *voir dire* proceedings will be subject to a substantial degree of continued public review.

We do not mean to say, however, that *voir dire* is not subject to the same Sixth Amendment guarantees as other parts of a criminal trial; *Waller*, *Presley*, and our own precedent make clear that a defendant's right to a public trial unquestionably extends to *voir dire*.  We emphasize only that in many cases the presence of the *venire* as a public witness safeguards the two relevant values of the public trial guarantee—ensuring a fair trial and reminding the prosecutor and judge of their responsibility to the accused and the importance of their functions. *See Gibbons*, 555 F.3d at 121.  Indeed, there is little basis to presume that the impartial, public

---

[4] The dissent maintains that because the *venire*'s attendance at court is required, its members lose their status as representatives of the public. *See* Dissenting Op. at 7.  Although the institutional role of the *venire* as public witness supplements—but does not control—our analysis of the values underlying the public trial guarantee, we respectfully disagree with the dissent that members of the *venire* are "part of the judicial process." *Id.*  There is a sharp distinction between the *venire* and an empaneled jury, and we see no reason to assume that members of the former shed their status as public witnesses simply because they are summonsed to court.  Regardless, while the presence of the *venire* as a whole is a factor we consider in this analysis, in no respect do we hold that its presence alone is sufficient to safeguard the public trial guarantee.

12

citizens comprising a *venire* would be any less vigilant in ensuring that the *voir dire* was fair and that the judge and the prosecutor remained cognizant of their responsibilities as would ordinary spectators observing the *voir dire* from the back of the courtroom.

II.    The Impact of *Presley v. Georgia*

Alternatively, Gupta argues that we need not consider whether the "triviality exception" applies to the exclusion in his case because that exception is no longer valid after *Presley*. We disagree.

*Presley* presented the narrow question of whether the Supreme Court of Georgia correctly applied *Waller* in finding that a trial court's exclusion of a spectator during *voir dire* was proper. Presley had argued before the Supreme Court of Georgia that prior to excluding the spectator from the courtroom, the trial court was required to consider alternatives to closure. *See* 130 S. Ct. at 723. But the Supreme Court of Georgia held that based on its review of Supreme Court precedent, it was not clear "whether a court must, *sua sponte*, advance its own alternatives to [closure]," and that "Presley was obliged to present the court with any alternatives that he wished the court to consider." *Id.* (alteration in original). The Supreme Court reversed in a brief *per curiam* opinion:

> In upholding exclusion of the public at juror *voir dire* . . . , the Supreme Court of Georgia concluded, despite our explicit statements to the contrary, that trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives. While the Supreme Court of Georgia concluded this was an open question under this Court's precedents, the statement in *Waller* that "the trial court must consider reasonable alternatives to closing the proceeding" settles the point.

*Id.* at 724 (quoting *Waller*, 467 U.S. at 48).

13

*Presley* did not expand the Supreme Court's precedent with respect to the public trial guarantee. *See id.* ("The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear . . . from this Court's precedents."). It simply reaffirmed the holding in *Waller*. And because the Supreme Court held that the Supreme Court of Georgia had misapplied *Waller* from the onset, it had no occasion to consider a "triviality exception" to the public trial guarantee. Accordingly, because it is undisputed that the district court's exclusion of Gupta's brother and girlfriend did not meet the four-part *Waller* test, and because *Presley* simply reaffirms that test, *Presley* does not alter the "triviality exception" in *Peterson* and our other cases, under which, notwithstanding an unjustified closure, vacatur of a defendant's conviction is not warranted if the closure did not subvert the values underlying the public trial guarantee.[5] *See also Morales*, 635 F.3d at 43-44 (assuming, without deciding, that the triviality exception still applies after *Presley*).

## CONCLUSION

To summarize, we hold: (1) although the district court's exclusion of Gupta's brother and girlfriend during *voir dire* failed to meet the four-factor test set forth in *Waller* (and now *Presley*), the exclusion was too trivial to implicate Gupta's Sixth Amendment right to a public

---

[5] Only one of our sister circuits has squarely applied *Presley* to a courtroom closure during *voir dire*. *See United States v. Agosto-Vega*, 617 F.3d 541, 548 (1st Cir. 2010). There, however, the First Circuit declined to consider whether a triviality exception existed post-*Presley*. *See id.* at 547-48 (citing *Gibbons*, 555 F.3d at 121).

14

trial; and (2) *Presley* does not alter our "triviality exception" to the public trial guarantee.[6]

We affirm the judgment of the district court.

---

[6] Although we conclude the triviality exception applies, our opinion may not be read as relieving trial courts of their burden of satisfying the four-factor test under *Waller* and *Presley* to the extent they intend to exclude the public from *voir dire*. There very well may be instances in which such an exclusion violates *Waller* and does not fall within the triviality exception, thus implicating the defendant's Sixth Amendment rights to the point that the judgment must be vacated. We hold only that under the particular circumstances presented here, this was not the case.

BARRINGTON D. PARKER, *Circuit Judge*, dissenting:

This case involves the undisclosed exclusion of the public by the trial judge from the entire voir dire in a criminal trial in a federal court. The closure was not requested by anyone and the government readily concedes that the courtroom should not have been closed. Neither defense counsel nor government counsel was advised that the closure had occurred. The closure did not come to light until nearly two years after the trial, and the circumstances surrounding the closure did not come to light until this Court remanded to the district court for fact finding.

The excuses generated from the district court for the closure—insufficient courtroom capacity and the need to protect veniremen from contact with the public—do not withstand even the most casual scrutiny. Adding insult to serious constitutional injury, the majority air brushes all of this as "trivial," reasoning that nothing of significance happened during voir dire and that the veniremen were adequate proxies for the excluded public. This reasoning, which is inconsistent with Supreme Court law and which would be difficult to take seriously were not the stakes so large, insults the values inherent in the Sixth Amendment. Although other courts have recognized narrow de minimis exceptions to the Sixth Amendment's public trial right, no other court has come close to blessing an undisclosed, complete, unrequested, and intentional closure of an entire voir dire. Because the majority's approach is misguided and dangerous, I respectfully dissent.

The facts are undisputed. Jury selection took place on March 24, 2008, beginning at 9:45 a.m. Before the proceedings commenced, the district judge, unbeknownst to counsel, directed her deputy to tell anyone who was not a prospective juror to leave the courtroom for the duration of voir dire. Gupta's brother and girlfriend and any other spectators present were required to

1

leave.  Long after the fact, when the closure came to light, the district court, at our direction, offered two purported justifications for excluding the public from voir dire: "to accommodate the large number of jurors in the venire panel" and "to protect the panel from hearing anything about the case from any member of the public."  The government concedes that neither rationale justified the closure.  Majority Op. at 5.

With the courtroom closed, the judge, the prosecutors, and defense counsel set about picking a jury.  Around midday, the court broke for lunch.  Voir dire resumed at 2:15 p.m., and concluded in the late afternoon, when the clerk read the names of the fourteen men and women who had been selected.  When Gupta's brother and girlfriend were permitted to reenter the courtroom, the jury had already been seated for opening statements.  After a trial that lasted about a week, Gupta was convicted of preparing and filing fraudulent immigration documents, and sentenced to fifty-one months in prison.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial."  U.S. Const. amend. VI.  Last year, in *Presley v. Georgia*, the Supreme Court confirmed that the Sixth Amendment right to a public trial extends to the voir dire of prospective jurors.  130 S. Ct. 721, 724 (2010); *accord Gibbons v. Savage*, 555 F.3d 112, 115 (2d Cir. 2009) (recognizing that Sixth Amendment guarantees defendant's "right to an open, public trial, including during the jury selection").  *Presley* built upon the Supreme Court's earlier decision in *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984), which held that voir dire must be open to the public under the First Amendment.  In *Press-Enterprise*, the Supreme Court found, based on its "review of the historical evidence," that jury selections have *always* been open to the public, for systemically essential reasons: "since the development

2

of trial by jury, the process of selection of jurors has presumptively been a public process";

"[t]his open process gave assurance to those not attending trials that others were able to observe

the proceedings and enhanced public confidence." 464 U.S. at 505-07 ("The process of juror

selection is itself a matter of importance, not simply to the adversaries but to the criminal justice

system.").

It is well established that the violation of the right to a public trial is a "structural" error,

*Waller v. Georgia*, 467 U.S. 39, 50 n.9 (1984), because it "affect[s] the 'framework within which

the trial proceeds,'" *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (quoting *Johnson v.*

*United States*, 520 U.S. 461, 468 (1997)). Therefore, a violation of the public trial right is not

subject to "harmless error" review. *Gibbons*, 555 F.3d at 119 ("[T]he violation of a defendant's

right to a public trial is not justified by a finding that the error was harmless."). Instead, a

structural error renders a criminal trial fundamentally unfair and "requires automatic reversal."

*Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006).

However, this Court recognizes a "triviality" exception to the public trial right, pursuant

to which not "every temporary instance of unjustified exclusion of the public—no matter how

brief or trivial, and no matter how inconsequential the proceedings that occurred during an

unjustified closure—[will] require that a conviction be overturned." *Gibbons*, 555 F.3d at 120.

Before today, the exception was available only in limited circumstances. *See, e.g.*, *id.* at 114,

121 (courtroom was closed for the first afternoon of a voir dire that spanned several days);

*Carson v. Fischer*, 421 F.3d 83, 92-93 (2d Cir. 2005) (defendant's ex-mother-in-law was

excluded during the testimony of one witness, while other members of defendant's family were

allowed to attend); *Bowden v. Keane*, 237 F.3d 125, 129-30 (2d Cir. 2001) (courtroom was

3

closed only during the testimony of an undercover officer, and a transcript of his testimony was made available to the public).

As these cases make clear, the exception applies only rarely and to truly trivial closings. *Gibbons* provided several examples of what this narrow exemption was intended to cover: proceedings lasting a few minutes after a lunch recess in the absence of a defense lawyer but where no evidence of consequence to his client was adduced; an ill-advised closure that lasted a couple of minutes during which nothing of consequence occurred and the court, quickly realizing its mistake, lifted the closure; or where the closure occurred during an important part of the proceedings but was inadvertent and the consequence of "an administrative malfunction." 555 F.3d at 120-21. In *Gibbons* itself, the case on which the majority relies, the trial judge closed the courtroom, on the record, for only the first afternoon of a jury selection that went on for several days. 555 F.3d at 114-15. Here, by contrast, the closure lasted for the entirety of jury selection, and was undisclosed.

For a number of reasons, the triviality exception simply was never meant to apply, and should not now be applied, to such a closure. A trial judge's undisclosed exclusion of the public from jury selection, without the knowledge or assent of the accused or the lawyers, seriously undermines the basic fairness of a criminal trial and the appearance of fairness so essential to public confidence in the system. Sixth Amendment jurisprudence teaches that the selection of jurors has presumptively been open since the birth of the jury trial, giving assurance to those not in attendance that their fellow citizens are able to observe the proceedings and thereby enhancing public confidence in the criminal justice system. *Press-Enter.*, 464 U.S. at 508 ("The value of openness lies in the fact that people not actually attending trials can have confidence that

4

standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives

assurance that established procedures are being followed and that deviations will become

known."). Transparency and confidence go hand in hand: citizens in an open society do not

demand infallibility from their institutions, but it is difficult for them to accept what they are

prohibited from observing. *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 572 (1980).

It is instructive to consider the circumstances in which courts have, to date, deemed voir

dire closures to be merely trivial, or de minimis. I have located eighteen cases in which a federal

or state court has found that a closure during voir dire, though improper, was too trivial (or de

minimis) to warrant overturning a conviction. As one would expect, in all of those cases, the

closure lasted only for part of voir dire and/or was limited to certain spectators, and in many

instances the closure was inadvertent.[7] Never, until today, has any court held that a judge's

---

[7]*See Gibbons*, 555 F.3d at 114, 121 (courtroom closed for first afternoon of jury selection that spanned several days); *United States v. Izac*, 239 F. App'x 1, 4 (4th Cir. 2007) (defendant's wife, a potential witness, was excluded on government's motion, and "courtroom otherwise remained open to the public"); *United States v. Saldana*, No. 2009-32, 2010 U.S. Dist. LEXIS 75019, at *30 (D.V.I. July 25, 2010) (alleged closure was inadvertent and lasted, at most, for the beginning portion of voir dire); *Garey v. United States*, No. 5:08-CV-90024, 2010 U.S. Dist. LEXIS 59239, at *47-48 (M.D. Ga. Mar. 29, 2010) (unbeknownst to judge, court security officer locked courtroom during voir dire, resulting in denial of entry to one newspaper reporter); *Yarbrough v. Klopotoski*, No. 09-0336, 2009 U.S. Dist. LEXIS 121330, at *34-35 (E.D. Pa. Oct. 30, 2009) (magistrate's report and recommendation) (closure limited to introductory portion of voir dire; courtroom was reopened for individual questioning of potential jurors), *approved and adopted*, 2009 U.S. Dist. LEXIS 114726 (Dec. 8, 2009); *Wilson v. United States*, No. MJG-08-160, 2008 U.S. Dist. LEXIS 69437, at *7-9 (D. Md. Sept. 5, 2008) (unbeknownst to judge, court personnel excluded defendant's mother and girlfriend from courtroom during voir dire); *United States v. Ahern*, No. 04-cv-474-SM, 2005 U.S. Dist. LEXIS 8235, at *13, 21 (D.N.H. Apr. 29, 2005) (defendant's mother left courtroom at the direction of defendant's own attorney); *People v. Bui*, 107 Cal. Rptr. 3d 585, 592-95 (Ct. App. 2010) (three spectators excluded for forty minutes of multi-day voir dire); *York v. State*, 380 N.E.2d 1255, 1258-59 (Ind. Ct. App. 1978) (inadvertent exclusion of two spectators resulting from misunderstanding between judge and court security officer); *Kelly v. State*, 6 A.3d 396, 410-11 (Md. Ct. Spec. App. 2010) (courtroom inadvertently closed to defendant's family members for morning segment of voir dire that lasted entire day); *Commonwealth v. Lang*, Opinion No. 114231, 2005-10311, 2011 Mass. Super. LEXIS 6, at *21 (Mass. Super. Ct. Jan. 31, 2011) (defendant had "not proved any exclusion of the public beyond the limited exclusion of [his sister] and her party on one occasion before impanelment began"); *Michigan v. Pinkney*, Nos. 282144, 286992, 2009 Mich. App. LEXIS 1526, at *17-19 (Mich. Ct.

5

intentional, unjustified, and undisclosed exclusion of the public for the *entirety* of voir dire can be brushed aside as a merely "trivial" affront to the Sixth Amendment.

As a purported justification for the closure the majority first asserts that the closure was brief and "nothing of significance happened" during that time. Majority Op. at 9. They are correct that the closure lasted for only several hours, but what happened during that time was *the entire process of selecting a jury*. From the judge's introductory remarks through the empaneling of the jurors, the courtroom was closed to Gupta's family and to the public. Every day, in courts across this Circuit, juries are chosen in unremarkable proceedings that last but a few hours. The majority's holding suggests that all such proceedings are inconsequential and can permissibly be closed to the public. Even more disturbing, the logic has no apparent end. Many cross-examinations, arguments to the court, statements to jurors, and instructions to defendants and to counsel are not especially long. Now, apparently, the summary exclusion of the public from such proceedings can be excused so long as what occurred behind closed doors

App. July 14, 2009) (live video streaming voir dire to spectators watching in alternate courtroom periodically cut out); *State v. Venable*, 986 A.2d 743, 748-49 (N.J. Super. Ct. App. Div. 2010) (judge announced that members of defendant's and victim's families would not be allowed in courtroom during voir dire; there was no evidence that any such family members had actually been present and excluded); *State v. Johnson*, Nos. A-5330-06T4, A-6330-06T4, 2010 N.J. Super. Unpub. LEXIS 748, at *30-31 (N.J. Super. Ct. App. Div. Apr. 9, 2010) (closure limited to "the time it took for the voir dire process to excuse a sufficient number of prospective jurors to free up enough space in the courtroom to accommodate the five members of the public [who had been excluded]"); *State v. Dreadin*, No. A-5721-06T4, 2009 N.J. Super. Unpub. LEXIS 2602, at *3-4 (N.J. Super. Ct. App. Div. Oct. 19, 2009) (judge instructed defendant's husband to wait outside courtroom during jury selection); *State v. Irizzary*, No. A-1072-05T4, 2007 N.J. Super. Unpub. LEXIS 1429, at *7-8 (N.J. Super. Ct. App. Div. June 1, 2007) (closure limited to defendant's girlfriend and lasted only thirty minutes); *State v. Jackson*, No. A-4764-03T4, 2005 N.J. Super. Unpub. LEXIS 186, at *6-9 (N.J. Super. Ct. App. Div. Dec. 15, 2005) (defendant's nephew mistakenly excluded by court officer); *State v. Lormor*, 224 P.3d 857, 861 (Wash. Ct. App. 2010) (closure limited to defendant's three-year-old daughter, whose presence judge thought would distract jurors); *see also Morales v. United States*, 635 F.3d 39, 44 (2d Cir. 2011) (one-morning closure during voir dire that lasted about a week was too insignificant to support ineffective assistance claim predicated on counsel's failure to object); *Barrows v. United States*, 15 A.3d 673, 679-81 (D.C. 2011) (upholding conviction on plain-error review where trial judge, on the record, closed courtroom for voir dire).

6

was brief and "nothing of significance happened." And the majority's approach is completely unable to accommodate the facts that the closing at issue was both advertent and undisclosed.

The majority also asserts that the closure was justified because the public *was* present in the courtroom for voir dire—in the form of the potential jurors. *Id.* at 10-12. This reason makes no sense to me. The long-established tradition of open voir dire contemplates ensuring that members of the general public, *external to the judicial process*, have the opportunity to observe the proceedings. As the Supreme Court found in *Press-Enterprise*, "beginning in the 16th century, jurors were selected *in* public," 464 U.S. at 507 (emphasis added), meaning that the doors of the "towne house" or other "common place" were open to "so many as will or can come so neare as to heare it," *id.* at 506-07 (emphasis deleted) (quoting T. Smith, *De Republica Anglorum* 96 (Alston ed. 1906)). By contrast, a voir dire is neither "public" nor "open" if the only members of the public allowed to attend are those who, having received juror summonses, are required to be there and part of the judicial process itself. Indeed, if the presence of potential jurors were sufficient to "safeguard[]" the values underlying the Sixth Amendment, Majority Op. at 13, it would seem that spectators could *always* be excluded. Furthermore, the assertion that the presence of the venire alleviated the Sixth Amendment concerns in this particular case ignores the fact that the potential jurors sitting in the courtroom did not (of course) include Gupta's brother and girlfriend, who had been forced to leave. *Cf. Smith v. Hollins*, 448 F.3d 533, 539 (2d Cir. 2006) (noting our "strong devotion to the preservation of [a defendant's] right to have family and friends present at his trial").

This case is not, in my view, close. A criminal defendant's right to a public trial extends to voir dire. Therefore, the intentional, unjustified, and undisclosed closure of an *entire* voir dire

7

is necessarily a non-trivial structural error that violates the Sixth Amendment and requires reversal. The result in this case is so self-evidently inconsistent with Supreme Court jurisprudence that I would hope that it becomes the subject of certiorari.