Clyde SNYDER, Petitioner,

v.

Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 72–23–E.

United States District Court,
N. D. West Virginia.

Oct. 4, 1973.

322

Chauncery H. Browning, Jr., Atty. Gen. of W. Va., Charleston, W. Va., for respondent.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

The Petitioner in the above-styled civil action is presently incarcerated in the West Virginia State Penitentiary at Moundsville, West Virginia, serving a sentence of from ten to twenty years for rape. The sentence was imposed by the Intermediate Court of Kanawha County by an order entered on June 25, 1969, following a trial by jury.

Pursuant to 28 U.S.C. § 2241 et seq., the Petitioner seeks federal habeas corpus relief in this Court. The exhaustion of state remedies has apparently been accomplished.

As grounds for relief, the Petitioner alleges the following: (1) that he was denied the right to an impartial jury; (2) that he was denied the right to a public trial; (3) that he was denied the right to confront a state witness; and (4) that he was denied the right to file a timely appeal.

The Petitioner's first contention arises from the discovery, during the Petitioner's trial, that one of the jurors was the mother of a secretary for the state police. The secretary apparently was aware of some of the facts of the Petitioner's case and may have been involved in secretarial work on the case. The voir dire examination by the trial court had elicited no responses, by the juror in question, as to any prejudicial feelings about the case or as to any knowledge of the facts of the case. Upon discovery of the mother-daughter relationship between the juror and the state police secretary, the Petitioner's counsel moved for a mistrial and the court held an *in camera* hearing. During that hearing, testimony was given by the juror, her daughter, and apparently by at least one other witness. The trial court denied the Petitioner's motion and resumed the trial of the case.

Basic to the criminal process is the Sixth Amendment right to an impartial jury. The record in the instant case shows, however, that the Petitioner was not denied this right by the trial court. The trial court's individual *in camera* interrogation of the juror in question disclosed that the juror answered truthfully the questions propounded, on voir dire examination, to the entire jury panel. The juror indicated in chambers that she did not recall reading about any of the facts of the case, that she did not know from any other source about the facts of the case, and that she was free of bias or prejudice, and that she did not discuss the case with her daughter. It is not necessary that a juror be completely ignorant of the facts of a criminal case, Hale v. United States, 435 F.2d 737 (5th Cir. 1970); "mere minimal and generalized knowledge of the pendency of a criminal proceeding" is similarly not enough to establish prejudice in a juror, United States v. Silverthorne, 430 F.2d 675, 678 (9th Cir. 1970). Inasmuch as the trial judge has great discretion with regard to juror qualification, which discretion will not be interfered with absent a clear showing of abuse, the Petitioner's first contention cannot stand. See United States v. Mason, 440 F.2d 1293 (10th Cir. 1971) and United States v. Sutton, 446 F.2d 916 (9th Cir. 1971).

The Petitioner's second contention is that he was denied a public trial. The record shows that during the summations of counsel, access to the courtroom was limited. This limitation was apparently brought about by the misunderstanding, by a deputy sheriff, of a request by the court that a deputy be posted at the door of the courtroom in order to keep any noise or disturbance at a minimum. The deputy thought that he was to keep people from going in or out of the courtroom during final arguments. As a result of this misunderstanding, the deputy denied access to members of the press and possibly others. It is not clear from the record whether or not any spectators were in the courtroom during the summations.

The due process clause of the Fourteenth Amendment requires that a state criminal defendant be afforded a

**324**

public trial. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Duncan v. Louisiana, 391 U.S. 145, 148, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The right to a public trial, however, is not absolute and is subject to limitations in certain circumstances. See 21 Am.Jur. 2d, Criminal Law §§ 262–266.

 It is helpful, in considering the issue raised by the Petitioner, to review the policy underlying a defendant's right to a public trial. As stated in United States ex rel. Bennett v. Rundle, 419 F.2d 599, 606 (3rd Cir. 1969), this policy is as follows:

> The searchlight of a trial which is open to the public serves as a restraint against the abuse of judicial power and also against possible perjury by witnesses who know that their testimony is exposed to public knowledge. Another element is that a public trial may lead, even accidentally, to the appearance of an important witness who, having heard the testimony, may come forward with relevant new evidence which may help the defendant. (Footnotes omitted).

 Although a petitioner need not establish prejudice as the result of the denial of a public trial in order to be afforded relief, United States v. Kobli, 172 F.2d 919 (3rd Cir. 1949), the petitioner must show that he was in fact denied a public trial. It is clear that a public trial is denied in situations where all testimony is taken in a private, closed proceeding, such as in Lewis v. Peyton, 352 F.2d 791 (4th Cir. 1965); the case at bar, however, is factually very dissimilar to the Lewis case. The Petitioner's trial lasted four days, from May 19 to May 22, 1969. The exclusion of the public was from a relatively small portion of the trial, only the final arguments of counsel. All other parts of the trial (including the taking of all testimony) occurred while the courtroom was open to the public. Neither the judge nor the parties were aware of any exclusion of the public taking place. Members of the public could possibly have been in the courtroom during the summations, the deputy having stated that he thought his function was to permit no movement in or out of the courtroom. A similar factual situation existed in Lacaze v. United States, 391 F.2d 516, 520–521 (5th Cir. 1968):

> Meritless and vacuous is the contention for reversal that during one session of the trial the judge ordered the back door locked until adjournment. Most likely, the action was taken to keep spectators from entering or leaving while the witness was testifying. There may well have been spectators in the courtroom at the time, and there is no indication that people were kept out over the whole course of the trial. We find no secrecy of the sort condemned in Re Oliver (citation omitted).

In the instant case, the trial judge did not order the exclusion of the public, but rather requested that a deputy sheriff be posted at the door for the purpose of insuring silence during the arguments of counsel. The mistaken notion of the deputy, resulting in the barring of the public from the courtroom, does not amount to a denial of a public trial necessitating habeas corpus relief. Had the public been barred from additional portions of the trial, particularly those involving the taking of testimony, a different result may have been required. The facts of this case, however, when considered in the light of the policy behind the Sixth Amendment right to a public trial, do not require relief for the Petitioner as to his second contention.

The Petitioner's third contention is that he was denied the right to confront a state witness, in violation of the Sixth and Fourteenth Amendments. At the Petitioner's trial, the judge sustained the state's objection to questions to be put to a prosecution witness for impeachment purposes. The questions related to an alleged incident of false swearing by the witness in 1964. After argument by both sides, out of the hearing of the jury, the judge sustained the

objection, stating that "the matter is too remote" to be the proper subject of cross-examination.

 A trial judge has traditionally had broad discretion as to the propriety of questions tending to impeach witnesses on matters collateral to the issues at trial. Such discretion can be challenged successfully only when abused. In the case at bar, the witness was twenty years old at the time of the Petitioner's trial; he would have been fifteen years old at the time of the alleged act of false swearing. The judge heard arguments of counsel as to the proposed cross-examination of the prosecution witness, and apparently reviewed the alleged false statement made by the witness in a deposition taken in 1964, prior to deciding to limit the cross-examination of the witness. The decision of the judge clearly does not enter into the area of abused discretion; it would be entirely reasonable to decide, upon the facts presented, that such testimony was in fact "too remote" to be of value as a challenge to the witness's credibility. Such decision cannot be said to deprive the Petitioner of his Sixth Amendment right of confrontation.

The problem of the cognizability, in federal habeas corpus proceedings, of questions relating to state trial court evidential decisions is summarized in Atwell v. State of Arkansas, 426 F.2d 912, 915 (8th Cir. 1970).

The question of admissibility of evidence usually is a matter of state law and procedure and does not involve federal constitutional issues. * * * It is only where the trial errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding.

See also Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960).

The Petitioner's final contention is that he was denied the right to file a timely appeal. The record shows that the Petitioner was in fact denied this right, following his original sentencing on June 25, 1969. The denial, however, was remedied by way of a petition for a writ of habeas corpus in the Intermediate Court of Kanawha County. That Court, on February 5, 1970, ordered that the Petitioner be resentenced "in order that the appeal time will run anew." The propriety of resentencing for the purpose of reinstating the time for appealing a conviction, the procedure which is questioned here by the Petitioner, is well established and is not subject to serious challenge. See State ex rel. Bradley v. Johnson, 152 W.Va. 655, 166 S.E.2d 137 (1969) and State ex rel. Bratcher v. Cooke, W.Va., 188 S.E.2d 769 (1972).

For the reasons above stated, it is ordered and adjudged that the Petitioner's claims for federal habeas corpus relief be, and the same are hereby, denied, and the petition herein is dismissed and retired from the docket of this Court.