◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KAREEM PETERSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Hall, J.), rendered October 3, 1990, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant contends that he was denied his right to a public trial when the courtroom door was inadvertently locked during his testimony. The defendant's trial was open to the public until the People called their last witness, an undercover officer who was involved in the so-called "buy and bust" operation which led to the defendant's arrest. The prosecutor requested that the courtroom be closed to protect the officer's identity. Following an inquiry which established that the officer was still engaged in undercover work, the court granted the application, and the courtroom was cleared of spectators. After the undercover officer testified, the People rested their case, and the defendant took the stand. No other evidence was presented on the defendant's behalf. Just before the defense counsel began his summation, someone knocked on the courtroom door. Only then did the court and the parties become aware that the courtroom had not been reopened after the undercover officer's testimony.

The defense counsel moved for a mistrial on the ground that the defendant had been denied his right to a public trial. The court denied the motion, finding that the closure of the courtroom during the defendant's testimony was inadvertent and that the defendant's trial had been open to the public. The court noted that the motion for a mistrial was not addressed to the decision to close the courtroom for the undercover officer's testimony and that its directive had been to close the courtroom for that purpose only. The defendant did not dispute the court's observation that the only persons present when the courtroom was initially closed were spectators, rather than members of his family, and that it was one of those spectators who later knocked at the door. The court also noted that the defendant's testimony had been brief, about 15 to 20 minutes, and that the courtroom had been immediately reopened upon discovering the mistake.

Contrary to the People's contention, we conclude that the issue of whether the defendant was deprived of his right to a

public trial is preserved for appellate review. Although the right to a public trial can be waived by failing to object *(see, e.g., People v Miller,* 257 NY 54; *People v Rivera,* 162 AD2d 728; *People v Marathon,* 97 AD2d 650), here the defendant objected and moved for a mistrial as soon as the unauthorized closure of the courtroom was discovered. We find, however, that under the circumstances presented here, the closure of the courtroom during the defendant's testimony does not require reversal of his conviction.

Before a criminal trial is closed to the public, the court must conduct an inquiry "careful enough to assure the court that the defendant's right to a public trial is not being sacrificed for less than compelling reasons" *(People v Jones,* 47 NY2d 409, 414-415, *cert denied* 444 US 946; *see also, People v Clemons,* 78 NY2d 48, 51-52). No inquiry was conducted to determine whether compelling reasons existed for the closure of the courtroom during the defendant's testimony. The issue here, however, does not concern the propriety of a closure order, as it is clear that the court did not explicitly exclude members of the public during the defendant's testimony *(see, e.g., People v Colon,* 71 NY2d 410, *cert denied* 487 US 1239 [the defendant's premise that locking the courtroom doors during the charge to the jury results in a "closure" of the proceedings did not withstand analysis as the trial court's action did not explicitly exclude the public but merely limited ingress and egress]). A public trial serves as a restraint on possible abuse of judicial power, fosters public confidence in the courts, and discourages perjury by subjecting the participants to public scrutiny *(see, Waller v Georgia,* 467 US 39, 46; *In re Oliver,* 333 US 257, 270; *People v Clemons, supra; People v Jelke,* 308 NY 56, 62-63). We conclude that it is not necessary, in order to advance these purposes, to require a reversal where the closure was completely inadvertent, and no evidence was offered that any observer wishing to enter was excluded.

The defendant also contends that he was deprived of a fair trial by the prosecutor's comments on summation. The majority of the challenged remarks were made in direct response to the summation by the defense counsel and constituted fair comment on the evidence *(see, People v Lee,* 167 AD2d 354; *People v Ayala,* 165 AD2d 878; *People v Singleton,* 121 AD2d 752). Although the prosecutor should not have asked the jurors to consider a hypothetical situation in which they were the victims of a crime, this remark does not warrant reversal *(see, People v Galloway,* 54 NY2d 396).

Under the circumstances of this case, we conclude that the trial court did not improvidently exercise its discretion in refusing to allow the defendant to reopen his case after the jury began its deliberations in order to introduce in evidence the shirt he allegedly wore on the day of his arrest. The record supports the court's determination that this was not newly-discovered evidence bearing directly on the issue of the defendant's guilt or innocence, it was not an essential element that had been overlooked, and its introduction at that stage of the proceedings would have tended to distort the evidence as a whole (see, People v Olsen, 34 NY2d 349).

The sentence imposed was not excessive (see, People v Suitte, 90 AD2d 80). Mangano, P. J., Bracken, Balletta and O'Brien, JJ., concur.