FAIRHURST, C.J. (dissenting)
¶494 I agree with the dissent on the guilt phase issue and would reverse. However, because a majority of the court would affirm the guilt phase, the court must perform its statutory death sentence review. I agree with Justice Gordon McCloud's opinion that the penalty is impermissibly disproportionate under RCW 10.95.130(2)(b).

These numbers are necessarily approximate since the trial reports were not completed in all required cases in 2006.

This number is derived from trial reports filed with our court. Trial judges are statutorily required to submit trial reports to the Washington State Supreme Court "[i]n all cases in which a person is convicted of aggravated first degree murder." RCW 10.95.120.

Davis and Gregory were resentencing proceedings.

This case involves both an appeal and our statutorily required capital sentence review under RCW 10.95.130. Because the decision of the court on the appeal is to affirm Conner Schierman's conviction, my dissent does not relieve me of the obligation to engage in the statutory review. Based on our precedent, I concur in the opinion of Justice Yu that Schierman's capital sentence was validly imposed.

We have recognized that the requirement for a "new trial" is shorthand for the rule of automatic reversal. See State v. Njonge, 181 Wash.2d 546, 554 n.3, 334 P.3d 1068 (2014). In isolated situations in which a public trial error occurs in a pretrial proceeding that can be repeated without any effect on the trial, the lesser remedy of invalidating that proceeding maybe appropriate. Id. (citing Waller v. Georgia, 467 U.S. 39, 49, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (ordering new suppression hearing, with new trial necessary "only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties")). Where it is not certain that the invalid proceeding will have no effect on the trial, however, a new trial is required. See State v. Bone-Club, 128 Wash.2d 254, 262, 906 P.2d 325 (1995).

The lead opinion suggests that none of our prior cases address the situation presented here because they all involved "the determination of facts behind closed doors." Lead opinion at 1080. Contrary to the lead opinion's insistence that "[t]his distinction matters to the public trial analysis," id. at 1080, we have rejected drawing a line between legal or ministerial issues on the one side and the resolution of disputed facts on the other. In State v. Sublett, a clear majority of this court recognized that such a distinction "will not adequately serve to protect defendants' and the public's right to an open trial." 176 Wash.2d 58, 72, 292 P.3d 715 (2012) (lead opinion of Johnson, J.); see also id. at 138, 292 P.3d 715 ("The legal/factual distinction is simply out of place in the context of the right to a public trial.") (Stephens, J., concurring).

The Second Circuit was the first to embrace the triviality or de minimis exception. See Peterson, 85 F.3d 39. In Gibbons, the court concluded that nothing of significance happened during an afternoon of voir dire in which the public, including the defendant's mother, were excluded from the courtroom, in part because individual jurors were being questioned privately in a room adjacent to the courtroom during that time. Id. at 114, 121. Of course, under subsequent case law, the private questioning of jurors outside the open courtroom, in the absence of a demonstrated need under the Waller or Bone-Club analysis, is itself an unlawful closure. See In re Pers. Restraint of Orange, 152 Wash.2d 795, 100 P.3d 291 (2004). It is therefore ironic that the court in Gibbons relied on this separate closure (which it ex ante deemed justified) as the reason nothing significant took place in the closed courtroom.

Based on Peterson, most courts number the values of a public trial at four, citing the passage in Waller extolling the importance of open courts. See, e.g., Peterson, 85 F.3d at 43 (citing Waller, 467 U.S. at 46-47, 104 S.Ct. 2210 and listing as nonexhaustive the values of (1) ensuring a fair trial, (2) reminding the prosecutor and judge of their responsibilities to the accused and the importance of their role, (3) encouraging witnesses to come forward, and (4) discouraging perjury). This reflects a reductionist reading of Waller, which does not purport to reduce the value of openness to a meager list, but more broadly explains that " 'judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.' " 467 U.S. at 46 n.4, 104 S.Ct. 2210 (quoting Estes v. Texas, 381 U.S. 532, 588, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring)). Indeed, Waller suggests no list is possible, as "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, [yet] the Framers plainly thought them nonetheless real." Id. at 49 n.9, 104 S.Ct. 2210.