IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34899-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| PATRICK WAYNE KARAS, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Patrick Wayne Karas seeks reversal of his convictions for second degree burglary and third degree theft, asserting his public trial right was violated by an unrecorded chambers conference in which the trial court heard an ER 615 motion to exclude witnesses and a motion in limine. In the published opinion originally filed in this appeal, we held that a public trial violation required us to reverse and remand for a new trial.

On the same morning we filed our original opinion, the Washington Supreme Court filed its opinion in *State v. Schierman*, in which it held that the closure of a criminal trial can sometimes be too inconsequential, given the purposes of the public trial right, to constitute a violation. __ Wn.2d __, 415 P.3d 106, 193 (2018) (Yu, J., concurring/dissenting). It adopted a widely accepted de minimis test from *Peterson v.*

No. 34899-7-III
*State v. Karas*

*Williams*, 85 F.3d 39, 43 (2d Cir. 1996). We granted the State's motion for

reconsideration and withdrew our opinion in order to reach the issue of whether the

closure in this case was de minimis.

We hold that the public trial right does not apply to rulings excluding witnesses

under ER 615 but did apply to motions in limine that were raised before testimony began.

Applying the *Peterson* test, we hold that the closed hearing of at least one of the motions

in limine cannot be characterized as de minimis. We again reverse and remand for a new

trial.

PROCEDURAL BACKGROUND

Facts underlying the charges against Patrick Karas for the most part are

unimportant to this appeal. On the first morning of trial in September 2016, the jury was

selected and was read the pattern advance oral instruction. The trial court then told

jurors:

> Now, folks, we're going to take up some matters, outside your
> presence. And, then, we'll have you back here, after lunch, for opening
> statements.
> And let's have you back in the jury room, at 1:30, and we'll try to
> take up as quickly as we can after 1:30.

Report of Proceedings (RP) at 81.[1] The trial court cautioned jurors against discussing the

---

[1] Unless otherwise noted, all report of proceedings citations refer to RP (Apr. 14, 2016).

2

case with anyone and told them the bailiff was then going to "show you where your new home away from home is." *Id.* at 82.

Although not reflected in the report of proceedings, a chambers conference then took place. The report of proceedings takes up again with proceedings in open court, but outside the presence of the jury:

> THE COURT: Okay. For the record, Counsel met in chambers, and discussed only legal issues. And we did discuss some motions.
> One was a motion to exclude witnesses, by the defendant. The Court granted that motion.
> And the Court was advised that the State will have Officer Josh Mathena as its representative, to be seated at counsel table. Everyone else is excluded.
> There's also a motion, by the defendant, to keep out testimony by— who was the officer? Corulli?
> [DEFENSE COUNSEL]: Corulli.
> THE COURT: Corulli, who, apparently, in his report, indicates some statements made by a cashier, at a business across from the alleged victim's business. And the Court granted that motion. Officer Corulli can't talk about what the cashier said.
> It was also indicated that the alleged victim had that conversation with the cashier. And the Court did not grant a motion in limine, preventing the alleged victim from talking about what he said to the cashier.
> And, the way it was presented, what the cashier said to him, was not being offered to prove the truth of the matter asserted.
> So counsel can renew the objection to that, if you want. But, right now, it sounds like that's the route we got to go, at this point in time.
> Anything else we need to put on the record?
> (Discussion had off record.)

*Id.* at 82-83. The report of proceedings next indicates, "Lunch recess taken." *Id.*

The chambers conference was not recorded. Our record does not contain court minutes or any other information on how long the chambers conference lasted.

The report of proceedings picks up again after the lunch recess, when the proceedings continued with opening statements.

The trial court had some familiarity with the conversation in the market that was the subject matter of the motion in limine from a CrR 3.5 hearing that had taken place several months earlier. During that hearing, a detective testified that Mr. Karas might have overheard Micah England, the victim of the burglary and theft, tell a cashier at a nearby market about where, in his fabrication shop, he kept his petty cash. At the CrR 3.5 hearing, the detective told the court:

> And unbeknownst to Micah at the time, but the cashier later reported to Micah that Mr. Karas was actually in the Malaga Market at that time, in an aisle, over a little bit, and potentially heard this conversation. Thus, giving Mr. Karas knowledge of money that is kept inside the office, at Micah's Fabrication.
> And, so, Micah relayed that information to me.

RP at 18-19. The detective testified that it was when he confronted Mr. Karas about this information that Mr. Karas agreed to tell him what happened. RP at 19.

Because the trial court denied the second motion in limine, the State was able to and did offer Mr. England's testimony about the conversation at trial. Mr. Karas's lawyer chose not to renew the objection.[2] Mr. England testified that after he was shown

---

[2] Having made the motion in limine, his objection was preserved.

4

surveillance video in which Mr. Karas appeared to enter his business on the night of the

burglary, he remembered a prior contact with Mr. Karas:

> A.     . . . The—the Saturday I was at the store.  I was in the—went into the store, to purchase some items.
> Q.     Which store was that?
> A.     Malaga Market.
> Q.     And where's the Malaga Market, in reference to your business?
> A.     I's less than ten minutes away.
> Q.     Okay.  And why were you at the Malaga Market?
> A.     I was making some purchases, in the morning—
> Q.     Okay.
> A.     —to go do some stuff.  And the gal had asked me if I had any—any small bills; ones, fives, or tens.
> Q.     And why—why would she be asking you that?
> A.     Because on—on certain weekends, they just run out of small bills, and they'll call me, or ask me if I have them.
> Q.     Oh, okay.
> A.     If they—
> Q.     And you trade them out?
> A.     Yeah.  We trade them out.
> Q.     Okay.  And, when she asked you this, what did you indicate?
> A.     I said, Yes, I'll go back—I do have them.  I'll go back to my office and get them.  And I'll be back.  And, then that's—
> Q.     Okay.  And did you do that, then?
> A.     Yes, I did.
> Q.     Okay.  And, so, on that day, then, you actually saw your petty cash envelope, and stuff?
> A.     Yes.
> Q.     Okay.  And, when you were at the Malaga Market, was anybody else there, besides the employee you were talking to?
> A.     Pat Karas was playing lottery tickets, right next to the counter, within four feet of me.
> Q.     Okay.  Within earshot?
> A.     Yeah.
> Q.     And did you say or have any conversation with Mr. Karas, on that occasion?

No. 34899-7-III
*State v. Karas*


        A.     No.

RP at 90-91.

At the close of trial, the jury found Mr. Karas guilty of second degree burglary and third degree theft. Following entry of the felony judgment and sentence, Mr. Karas appealed. For the first time, he alleged that the chambers conference on the morning of the first day of trial was a public trial violation.

ANALYSIS

Mr. Karas contends the trial court violated his right to a public trial when it heard unrecorded arguments and ruled on motions in chambers without conducting a *Bone-Club*[3] analysis. The State argues there was no public trial right violation and, following *Schierman*, argues that the closure was de minimis.

I.     THE HEARING IN CHAMBERS OF THE MOTION IN LIMINE, BUT ONLY THAT HEARING, IMPLICATED MR. KARAS'S PUBLIC TRIAL RIGHT

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant the right to a public trial. A public trial right violation may be raised for the first time on appeal. *State v. Shearer*, 181 Wn.2d 564, 569-71, 334 P.3d 1078 (2014). Whether an accused's constitutional public trial right has been violated is a question of law reviewed de novo. *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

---

[3] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

In analyzing whether a defendant's right to a public trial has been violated, we have previously begun by examining first "whether the public trial right is implicated at all" and "then turn to the question [2] whether, if the public trial right is implicated, there is in fact a closure of the courtroom; and if there is a closure, [3] whether . . . the closure was justified." *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014) (some alterations in original) (quoting *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)). After *Schierman*, the second step should address any contention that because the closure was de minimis, it did not violate the defendant's public trial right.[4] We reframe the second step as "whether, if the public trial right is implicated, there is in fact a closure of the courtroom that is not de minimis."

At issue first is whether the public trial right attached to the trial court's hearing of three motions. The first motion sought routine application of the court's authority to exclude witnesses under ER 615, triggering the State's right under that rule to designate a representative who would not be excluded. The second and third motions were case-

---

[4] The lead opinion in *Schierman* sometimes speaks as if the complained-of action by the trial court *did* violate Schierman's public trial right but was a "de minimis violation" or "de minimis error" that did not require the remedy of automatic reversal. *See e.g.*, 415 P.3d at 123-24 (Gordon McCloud, J., lead opinion). A partial concurrence /partial dissent signed by three justices speaks of a de minimis *closure* that does not violate the public trial right. Both opinions cite the *Peterson* test with approval. *Peterson* speaks of a de minimis *closure* that falls short of a constitutional violation. We follow that analysis.

7

specific motions in limine involving the conversation between the victim and the store

cashier that Mr. Karas is alleged to have overheard.

In the second motion, Mr. Karas asked the court to exclude any testimony by

Officer Douglas Corulli about what the cashier told him about the conversation with Mr.

England that could have been overheard by Mr. Karas. That motion was granted.

In the third motion, Mr. Karas asked the court to exclude any testimony by Mr.

England about his conversation with the cashier. The court denied the motion to exclude

Mr. England's testimony, apparently persuaded that what was said would not be offered

for its truth. While denying the motion, the court added, "counsel can renew the

objection [as] to that." RP at 83.

From the trial judge's statement on the record that he and the lawyers "discussed

only legal issues" in chambers, he appears to have assumed that "legal issues" do not

implicate public trial rights. But in *State v. Sublett*, 176 Wn.2d at 72-73, our Supreme

Court rejected the legal and ministerial nature of proceedings, as distinguished from

proceedings that are adversarial and factual, as the basis for determining whether the

public trial right applies. *Smith*, 181 Wn.2d at 514. *Sublett* held that Washington courts

are to apply experience and logic to make the determination. *Id.*

"The first part of the test, the experience prong, asks 'whether the place and

process have historically been open to the press and general public.' The logic prong

asks 'whether public access plays a significant positive role in the functioning of the

8

particular process in question.'" *Sublett*, 176 Wn.2d at 73 (citations omitted) (quoting

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1

(1986)).  Only if both questions are answered affirmatively does the public trial right

apply.  *Sublett*, 176 Wn.2d at 73.  The defendant has the burden to show that the

experience and logic test is satisfied.  *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296

P.3d 872 (2013).

The State places primary reliance for its position that there was no violation on

*Smith*, in which our Supreme Court held that traditional sidebar conferences do not

implicate the public trial right.  It did not limit its treatment of sidebars to conferences

taking place in the courtroom, at the bench; the sidebars in *Smith* took place in a hallway.

But it limited "'[p]roper'" sidebars to "proceedings that 'deal with the mundane issues

implicating little public interest[,] . . . done only to avoid disrupting the flow of trial, and

. . . either . . . on the record or . . . promptly memorialized in the record.'"  *State v.*

*Whitlock*, 188 Wn.2d 511, 522, 396 P.3d 310 (2017) (some alterations in original)

(quoting *Smith*, 181 Wn.2d at 516 & n.10).  It found that the "experience" prong was not

established because "[s]idebar conferences have historically occurred outside the view of

the public."  *Smith*, 181 Wn.2d at 515.  In holding that the "logic" prong was likewise not

shown, it reasoned that "[f]or the public, discussions on hearsay and the prior inconsistent

statement exception [at issue in *Smith*] are practically a foreign language," such that

public access would play no positive role in the proceeding.  *Id.* at 519.  It held that a

9

sidebar conference, "even if held outside the courtroom," does not implicate

Washington's public trial right. *Id*.

Mr. Karas focuses on the Supreme Court's decision a few years later in *Whitlock*.

In *Whitlock*, in the course of a bench trial, the State objected to questioning of a witness

that could reveal to the defendants that she was a police informant. The court recessed

proceedings to chambers to hear the lawyers' arguments and make its ruling. The

proceedings in chambers were not recorded. While the parties made a record later that

day of what had occurred, they did not make it promptly.

In Mr. Whitlock's appeal, the State characterized the chambers conference that

had taken place during trial as equivalent to a midtrial sidebar and argued that *Smith* was

controlling. But a unanimous Supreme Court held that the chambers conference in

*Whitlock* was not a "proper" sidebar conference. One reason was that the conference

took place in chambers. Because a judge's chambers are closed to the public, the Court

refused to treat a chambers conference as the functional equivalent of a conference at the

bar. A second reason was the delay in memorializing what had occurred, particularly

where there had been no reason for not handling the argument as a sidebar and recording

it in real time. *Whitlock*, 188 Wn.2d at 522-23.

Mr. Karas's argument proceeds as if *Whitlock* held that anything that is not a

sidebar is subject to the public trial right. But we do not read *Whitlock* as treating the

characteristics of a proper sidebar as the new litmus test for applying the public trial right.

10

It was because the State characterized the chambers conference as sidebar-like and invoked *Smith* that the Supreme Court focused on whether the conference qualified as a "proper" sidebar. We still examine experience and logic in determining whether the public trial right applies.

We turn first in this case to the trial court's consideration of a request to exclude witnesses and the State's identification of Officer Josh Mathena as its representative to attend the entire trial. Whether to exclude witnesses under ER 615 and who an attorney will designate as a client representative to attend trial falls in the category of housekeeping measures unrelated to the merits of a case. It is not uncommon for such housekeeping measures to be discussed in chambers or in a nonpublic scheduling call, or for them to be decided without discussion by a trial court that simply announces its usual practice. Public access plays no significant positive role in the application of ER 615, which is rarely a matter of dispute and not very consequential if there is a dispute. Routine witness exclusion can fairly be characterized as a "mundane issue[ ] implicating little public interest." *Whitlock*, 188 Wn.2d at 513-14 (quoting *Smith*, 181 Wn.2d at 515).

The closer issue is the motions in limine that the court entertained in chambers. In *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 106, 340 P.3d 207 (2014), a plurality decision, the lead opinion observed that the Supreme Court "ha[d] not yet addressed whether a closure occurs when a trial judge discusses and rules on motions in limine in chambers." It acknowledged that in *Smith*, "we alluded to the fact that evidentiary

11

motions may not implicate the public trial right," citing a footnote in which it had stated that while sidebars were at issue, "'The analysis would not change for on the record evidentiary conferences in chambers.'" *Id.* (quoting *Smith*, 181 Wn.2d at 512 n.3). The lead opinion went on to say that "because sidebars, and not evidentiary conferences, were at issue in that case we did not decide definitively one way or the other." *Id.* Concluding that it need not reach the issue of whether the public trial right applies to hearings on motions in limine, the lead opinion did not address it further. *Id.*

Five members of the *Speight* court (concurring Justice Madsen and the four dissenters) believed that to reach the majority's disposition of the case—denial of the personal restraint petition—the Court *did* need to address whether the public trial right applied to motions in limine. The dissenters believed that they alone could ignore the issue, since they would have granted the petition and remanded for a new trial on the basis of a closure of voir dire. The public trial right status of motions in limine was addressed only by Justice Madsen's concurrence, which concluded that "under [the] experience and logic test, motions in limine do not implicate public trial rights." *Id.* at 112 (Madsen, J., concurring).

> Addressing the experience prong, Justice Madsen concluded:
>
> Motions in limine concern interlocutory pretrial decisions made by the trial court, typically involving legal questions about the admissibility of certain evidence. Often these pretrial decisions will be revisited during the course of proceedings as the evidence develops. As with rulings on

> contemporaneous objections to evidence, motions in limine are decided outside the hearing of the jury.

*Id.* at 110. We do not disagree with the observation that motions in limine are decided outside the hearing of the jury, but the question remains whether they have historically been decided somewhere other than in an open courtroom. Even if jurors must be absent, the defendant (when present) and members of the public may listen to proceedings that take place in an open courtroom.

*Speight* involved motions in limine raised pretrial that were heard on the first morning of trial, as is commonly the case. But because the trial court wanted to hear and decide the motions while members of the venire filled out jury questionnaires in the courtroom, the motions were heard in chambers. Relocating the hearing was understandable under the circumstances, but hearing motions in limine in chambers is not the norm. More often, as in the trial below, motions in limine raised before trial are taken up by a court at a time when jurors or potential jurors are not present. The arguments therefore can and do take place in an open courtroom.

Turning to the logic prong, the State emphasizes the fact that in this case, as in *Smith*, the motion in limine addressed a hearsay issue it contends was unlikely to be understood by the public. *Smith*, however, spoke of discussion of hearsay "and the prior inconsistent statement exception," 181 Wn.2d at 519, a more arcane evidentiary issue than those presented here. Based on information gleaned from the CrR 3.5 hearing, the

defense motion in limine heard in chambers in this case concerned what would have been pure hearsay coming from Officer Corulli. Only slightly more complex was whether a discussion of the victim's cache of cash that Mr. Karas possibly overheard could be proved with testimony from the victim of statements that were not being offered for their truth. These are issues that an attentive and interested member of the public could grasp, whatever the complexity. Public trust is advanced by giving attentive, interested members of the public the opportunity to know why evidence that seems relevant might be excluded for some countervailing reason. *See Smith*, 181 Wn.2d at 544 (Owens, J., dissenting) ("[H]iding discussions over evidence and testimony in private will not further . . . goals" of "foster[ing] trust in our judicial system, and . . . allow[ing] members of the public to see justice done in their communities.").

Mr. Karas satisfies us that contested motions in limine that are raised before trial and that can easily be resolved at times when jurors are not present have historically been open to the press and the general public, and that the functioning of evidentiary decision-making is served by allowing public access. For the trial court to hear and decide the motions in limine in chambers without considering the *Bone Club* factors was an unjustified courtroom closure.

II.     THE CLOSURE WAS NOT DE MINIMIS AS TO THE MOTION TO EXCLUDE MR. ENGLAND'S TESTIMONY

In *Schierman*, a majority of justices recognized that the Court's precedent rejected the possibility of a de minimis closure and instead assumed that every closure not justified by a *Bone-Club* analysis on the record, no matter how trivial, violated the public trial right and required automatic reversal.[5] 415 P.3d at 192 (Yu, J., concurring /dissenting); *id.* at 201 (Stephens, J., dissenting).

Three justices—Justice Yu and those joining her opinion—found the precedent to be incorrect because it was based on the flawed reasoning that any finding of a de minimis closure would have to be based on whether there was a violation but no prejudice—a determination that cannot be made where structural error is involved. *Id.* at 192 (Yu, J., concurring/dissenting). They held that the correct inquiry, and a constitutionally permissible one, asks instead whether given the nature of the closure, the values underlying the public trial right were undermined in a given case. *Id.*

Justice Yu and those joining in her opinion found the Court's precedent to be harmful because it "'leads to delayed justice and additional costs'" that "simply cannot be justified in light of the flawed reasoning underlying our rejection of the possibility of de minimis closures." *Id.* at 193 (quoting *Sublett*, 176 Wn.2d at 103, (Madsen, C.J., concurring)).

---

[5] The six-member majority on this issue comprised Justice Yu and those joining in her opinion concurring in part and dissenting in part (Justices Wiggins and Gonzalez) and Justice Stephens and those joining her dissent (Justices Johnson and Owens).

Justice Gordon McCloud's lead opinion rejected the contention that the Court's precedent had to be overruled in order to recognize that there could be de minimis closures; it was her position that Mr. Schierman's case presented "a question of first impression."[6] *Id.* at 124 (lead opinion). She wrote that while arguments of de minimis violations had been rejected in the past, those arguments had been raised in cases that "involved the determination of facts behind closed doors"—a violation that would never be de minimis. *Id.*

Like Justice Yu, Justice Gordon McCloud spoke approvingly of the *Peterson* test. *Id.* (citing *Peterson*, 85 F.3d at 43). The *Peterson* test "assumes the public trial right is implicated by the proceeding, and then asks whether, in light of the particular facts presented in the individual case, an unjustified closure *actually undermined* [the] purposes [of the public trial right]." *Id.* at 193 (Yu, J., concurring /dissenting).

The purposes of the public trial right are "well established." *Id.* at 194. They are:

> "'to ensure a fair trial, to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.' It also affirms the legitimacy of the proceedings and promotes confidence in the judiciary."

---

[6] Justice Madsen filed a concurring opinion but "agree[d] with Justice Gordon McCloud's lead opinion discussion of the guilt phase issues" in the case. *Schierman*, 415 P.3d at 190 (Madsen, J., concurring).

16

*Id.* (quoting *In re Det. of Morgan*, 180 Wn.2d 312, 325, 330 P.3d 774 (2014) (quoting, in turn, *Sublett*, 176 Wn.2d at 72)). To determine whether these purposes were undermined by a given closure, we consider the record, and "may look to the length of time the courtroom was closed, the reason the courtroom was closed, whether the public actually learned what occurred during the closed proceeding, and whether the closed proceedings related to the ultimate question of guilt or innocence." *Id.* "[N]o single factor is either necessary or sufficient." *Id.*

The closure at issue in *Schierman* was a chambers conference with lawyers during jury selection, for the purpose of hearing argument and deciding six challenges for cause.[7] Before retiring to chambers, the trial court announced to jurors that it expected to return to the bench in less than 10 minutes. *Id.* at 118 (lead opinion). Upon returning to the courtroom, it immediately announced which jurors were being excused. *Id.* at 119. It did not recap the arguments made, but a court reporter had been present in chambers and a record of the argument was made. *Id.* at 119 & n.4. Justice Gordon McCloud's and Justice Yu's opinions both recognize that the only purposes of the public trial right that were not implicated in any respect by the chambers conference in Schierman's case were the purposes of encouraging witnesses to come forward or discouraging perjury. *Id.* at 124-25 (lead opinion), 194 (Yu. J., concurring/dissenting). Other purposes were

_____

[7] The trial court had also addressed hardship requests by prospective jurors but the Court did not find that action to be subject to the public trial right.

17

implicated, but the closure was found to be de minimis because of its short duration, its subject matter, and the fact that the proceedings that had occurred were promptly reported in open court.

The closed hearing on the motion to exclude Mr. England's testimony is distinguishable from the closure in *Schierman* in several important respects.[8] Because the court reporter did not indicate the time when the chambers conference began or ended, we do not know how long the closed proceeding lasted. Evidence that Mr. Karas overheard the conversation was important evidence for the State, and defense counsel might have argued zealously for its exclusion. No record of the argument was made, and the trial court provided only a cursory explanation of the defense argument when it summarized the chambers conference.

Different explanations were given in the CrR 3.5 hearing and at trial about how Mr. England became aware of Mr. Karas's presence in the market. In the CrR 3.5 hearing, the detective reported having been told that the cashier informed Mr. England of Mr. Karas's presence after the fact. At trial, Mr. England testified that he saw Mr. Karas in the market himself. One report or the other was mistaken. Had the motion in limine been argued in an open courtroom, this discrepancy might have been detected. Erroneous

---

[8] Because we conclude that the closed hearing on the motion to exclude Mr. England's testimony was not de minimis and requires reversal, we need not address the closer question of whether the closed hearing on the motion to exclude Officer Corulli's testimony was de minimis.

testimony might thereby have been avoided or perhaps additional witnesses would have been called who could resolve the discrepancy.

There was no need to entertain the motion in chambers. The court had excused the jury. The parties, counsel, and the court could have remained in open court for argument of the motion.

Considering all, the closure cannot be characterized as de minimis. Reversal is required. For that reason, we need not address Mr. Karas's recent motion on costs imposed by trial court.

Reversed and remanded for a new trial.[9]

_____
Siddoway, J.

I CONCUR:

_____
Pennell, A.C.J.

---

[9] Our disposition renders moot three issues raised by Mr. Karas in a statement of additional grounds.

No. 34899-7-III

FEARING, J., (concurring) — I disagree with the majority's ruling that a motion to exclude witnesses passes the history prong of the experience and logic test. I disagree that trial courts have historically entertained motions to exclude witnesses in chambers. As a trial lawyer, I observed such motions always being heard in open court outside the presence of the jury. The parties brought and argued the motion at the same time as motions in limine and even frequently, but erroneously, labeled the motion to exclude as a motion in limine. One party conceived of the motion well in advance of trial, and so the trial court did not hear the motion on an emergent basis such as an evidentiary objection that requires a sidebar conference.

I would hold the violation of the public trial right as to the motion to exclude witnesses to be de minimis violation of the right. I therefore concur in the result of the majority.

Fearing, J.